555 P.2d 1145

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Annette DOUGLAS, Defendant-Appellant.**

**No. 12039.**

Supreme Court of Idaho.

Nov. 1, 1976.

————◆————

Dennis E. Wheeler, Wallace, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, Randy W. Day, Prosecuting Atty., Bonners Ferry, for Boundary County.

PER CURIAM:

This appeal is from a judgment of conviction entered upon a jury verdict finding the defendant appellant Annette Douglas guilty of the crime of embezzle-ment. She argues by her counsel on appeal (who was not trial counsel) that her conviction should be set aside because: (1) her *Miranda* rights were violated during testimony at trial of an alleged oral confession which she made of the crime to a sheriff and his deputy; and (2) she was denied the effective assistance of counsel. We reverse Douglas' conviction because we find that she was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the Constitution of the United States and by Art. 1, § 13, of the Idaho Constitution. Thus, we do not reach the *Miranda* issue.

The defendant appellant Annette Douglas was accused of embezzlement of $50.00 United States currency belonging to the state of Idaho or Boundary County that had come into her possession and control while she was working as a clerk in the office of Chris Ketner, the sheriff of Boundary County. Douglas was a juvenile at the time of the alleged offense. Ketner, who swore out the criminal complaint against Douglas, was the only witness who testified against her at the preliminary hearing. His testimony was to the following effect:

On July 19, 1974, a bank officer telephoned the sheriff's office to tell him that the sheriff's account at the bank was overdrawn by approximately $300.00. Upon learning this, Ketner contacted deputy Karen Robinson, the bookkeeper for the sheriff's office, to examine the sheriff's office books. She determined that between $700 and $800 was unaccounted for. When the sheriff was unable to locate the missing money, he began to suspect that it might have been taken from the safe in the sheriff's office, which was rarely locked and to which all the employees in the sheriff's office had access. The safe normally contained receipts from the sale of driver's licenses and interstate trucking permits, along with various other funds.

On July 23, Ketner instructed Frank Quagliano, the day shift deputy, to mark the currency that was in the office safe

each morning and to count the money with Robinson every morning. Quagliano was instructed to tell no one else that he had marked the money. That day Annette Douglas, who was scheduled to work, called in sick and did not appear at the sheriff's office. The following morning, July 24, Quagliano and Robinson again both counted the money before the beginning of the day's business and verified that no money was missing. Annette Douglas came to work that day. Her job, which included the sale of driver's licenses and interstate trip permits, allowed her access to the safe. At 11:45 a. m., shortly after Douglas had left the office to begin her lunch hour, Robinson checked the cash box in the safe and determined that $50.00 was missing. She told Quagliano of the missing money. He in turn immediately phoned Ketner. When Douglas returned from lunch, Robinson asked her to go to Ketner's office where Ketner and Quagliano were waiting to question her about the missing money.

According to Ketner's testimony, when Douglas came into his office Ketner told her that approximately $800.00 was missing from the sheriff's office and that they knew that she had taken it. He testified that she initially denied having taken the money, but later in the interrogation admitted to having taken only $300 or $400. The sheriff then told her to go home and return with the $50 that had been discovered missing that morning. After allowing Douglas to leave, he and Quagliano decided that they should drive to her home to prevent her from destroying the evidence.

Ketner further testified that upon arriving at Douglas' home, Douglas handed them a roll of bills. Ketner did not examine the bills at the time, but when he returned to the office he found that she had given him two ten dollar bills and two five dollar bills, all but one of which bore the mark Quagliano had earlier made upon the bills in the safe.

Annette Douglas, who was the only other witness at the preliminary hearing, testified that she had never taken money from the safe, but on returning from lunch on July 24, 1974, she had been asked to go to the sheriff's office and, once there, Ketner and Quagliano had told her there was money missing from the safe and accused her of having taken it. She testified that Ketner demanded the immediate return of $50.00 and told her that she would have to return some $300.00. She denied having taken any money, but nevertheless was then sent home with instructions to return with $50.00. She testified that shortly after she arrived home, the sheriff arrived and pushed his way into her house and demanded the money. She then gave him all the money in her purse, $30.00, because the sheriff had threatened her and her friends who were at the house.

The attorney who represented Douglas at trial had also represented her at the preliminary hearing. Thus, her trial attorney had been present to hear the sharp conflict in the sheriff's and Douglas' testimony at the preliminary hearing concerning whether Douglas had admitted taking money from the sheriff's office and describing the circumstances under which the sheriff had obtained $30.00 from Douglas at her home. He also heard the sheriff's testimony that he had accused Douglas of taking the money and that Douglas had admitted taking it, but in which the sheriff had not mentioned giving Douglas the *Miranda* warnings before making the accusation or asking for her answer.

Douglas argues that her trial counsel failed to give her effective assistance of counsel. She cites the following example of his failure to protect her *Miranda* rights as evidence of his ineffectiveness. The first witness called by the prosecution at trial was Deputy Quagliano. After giving testimony substantially identical to that given by the sheriff at the preliminary hearing concerning marking the money in the safe and Robinson's discovery on the morning of July 24 that money was missing from the safe, Quagliano was asked to describe what happened when Douglas was

summoned to the sheriff's office after returning from lunch. He testified that they informed her that money was missing and told her that they were sure that she had taken it. He further testified that they told her that they thought a total of $800.-00 had been taken, but that she in turn told them that she had taken only $300 or $400. Quagliano did not testify that either he or the sheriff had given Douglas the *Miranda* warnings before accusing her of taking the money or before she responded to the accusation, but, on the other hand, he was never asked whether *Miranda* warnings had been given. Trial counsel made no objection to this testimony at the time it was given, nor did he attempt to ask whether Douglas had ever been given *Miranda* warnings before answering the sheriff's accusation.

Quagliano was the only witness to testify during the first day of trial. The following morning, before a second witness was called and before the jury returned to court, trial counsel moved to strike those portions of Quagliano's testimony concerning the confession. He explained his failure to object the day before in the following manner:

"I realize this could have or this problem should have been discovered by a pretrial discovery. The fact of the matter is, I didn't and the reason I didn't is because my client had assured me she had made no such confession. And I think from the basis of his testimony yesterday that had I made the motion timely, it would have been granted to suppress any type of a statement because clearly he stated her rights to remain silent, etc., had not been given to her . . . the employer was a peace officer and clearly stated that she was the accused. It wasn't just a general investigation. The matter had centered on her as a suspect for taking the money.

"I note that in the rules, Rules of Criminal Procedure, that these motions are to be made before trial, but I also note it does state relief may be granted upon cause being shown. And if I made a mistake, I wouldn't want my client to suffer for it." Rptr.Tr., pp. 59–60.

After listening to argument upon the motion, the court stated that Douglas would have been entitled to the *Miranda* warnings after the sheriff accused her of taking the money, but denied trial counsel's motion on the ground there had been no timely motion to suppress.

In addition to trial counsel's failure to reacquaint himself with the testimony given at the preliminary hearing so that he could anticipate that Sheriff Ketner or Deputy Quagliano would testify that Douglas had orally confessed to them and to move to suppress this testimony on the grounds that it was inadmissible under *Miranda,* Douglas further argues on appeal that trial counsel's failure to make a pretrial motion to suppress the $30.00 that she gave Ketner on the ground that it was illegally seized from her in violation of her Fourth Amendment rights is also evidence of inadequate preparation for the same reason.

Besides these failures to object to the introduction of this evidence, Douglas also argues that trial counsel failed to adequately advocate her interests because he made statements to the jury inconsistent with Douglas' version of the events. At trial, Douglas testified that she was being "framed". She argues here that her trial counsel could best have presented her case by showing that someone else in the sheriff's office had the motive or the opportunity to "frame" her. Instead of doing this, however, trial counsel began his cross examination of Karen Robinson, the deputy in charge of keeping the books and accounts of the sheriff's office, who was one of three sheriff's office employees who knew that funds were missing, with whom Douglas shared a common working area and who first reported that money was missing from the sheriff's safe, with the

following comment eliminating her from suspicion of complicity in a frame-up:

> "[B]efore I start I want to assure you contrary to what you may have heard, I don't think you did anything wrong whatsoever. I want you to know that." Rptr.Tr., Vol. 2, p. 91.

Douglas also argued that her trial counsel denigrated her version of the events *vis-a-vis* that of her accusers by the following statements he made in his summation to the jury.

> "Ladies and gentlemen of the jury, this is about the end of the road, so to speak, on this case. It has been a long two days really. It's been a frustrating case and a difficult case for me particularly because I work closely with the Sheriff's office and law enforcement officials." Rptr.Tr., Vol. 2, p. 219.

and,

> "Now, I really don't have any answers as far as about this marked money. That's something for you to have to decide yourself. I have asked Annette Douglas time and time again if there was any possible way she could maybe herself made change and she said, no, she never made any change, wasn't any way it was marked she could have gotten money out of that box[.] It's up to you, ladies and gentlemen of the jury. It hasn't been a very pleasant case to try and it isn't going to be a pleasant case for you to decide. Frankly, I don't envy you." Rptr.Tr., Vol. 2, p. 224.

Based upon these statements and trial counsel's failure to contest the introduction of the testimony that Douglas had confessed to the sheriff and his deputy and the failure to object to the introduction of the $30.00 the sheriff obtained from her, Douglas' counsel on appeal argues that she was denied the effective assistance of counsel during the trial. We agree.

Ordinarily the record before this Court is not complete enough to allow us to evaluate a claim of ineffective assistance of counsel based on inadequate preparation for trial or failure to pursue an advocate's role at trial, and the matter must be remanded for futher proceedings on such questions or they must be raised by petition for post conviction relief. *State v. Morris*, 97 Idaho 420, 546 P.2d 375 (1976); *State v. Tucker*, 97 Idaho 4, 539 P.2d 556 (1975). However, it is clear from this record that Douglas was not effectively represented at trial and therefore she was denied her constitutional right to counsel guaranteed by the Sixth Amendment to the United States Constitution and Art. 1, § 13, of the Idaho Constitution, and she is entitled to a new trial.

In view of this reversal, it is unnecessary to reach the other issues raised on appeal. Reversed and remanded.