702 P.2d 826

**Joseph Alexander CARTER, Petitioner-Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 15435.**

Supreme Court of Idaho.

June 20, 1985.

---

David Z. Nevin, of Seiniger & Nevin, Boise, for petitioner-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for respondent.

DONALDSON, Chief Justice.

On September 4, 1977, Larry Tolley was shot to death near the town of Rigby, Idaho. The events leading up to the shooting

are set out in *State v. Carter*, 103 Idaho 917, 655 P.2d 434 (1982). Appellant, Joseph Carter was charged with voluntary manslaughter in connection with the death of Tolley and was bound over to stand trial in the district court. After various pretrial motions, which did not include a motion to suppress, trial was commenced on April 19, 1978. The jury found Carter guilty as charged.

Carter moved for a new trial. The district court denied the motion and imposed an indeterminate six-year sentence. Carter filed timely notice of appeal, and his motions for stay of execution of sentence and for bail pending appeal were granted. Throughout the proceedings which followed, except for a 16-day period in early 1983, Carter remained free on $1,000 bail. After hearing and re-hearing, this Court affirmed the conviction.

Thereafter, on March 14, 1983, Carter filed his petition for post-conviction relief which is the basis of the present appeal. The district court continued Carter's release on bond pending disposition. On April 12, 1983, the State filed a motion to dismiss. The State's motion was apparently denied and on September 30, 1983, the first of two evidentiary hearings was held. Carter testified in his own behalf along with his wife and parents, and also offered the testimony of one of his two trial attorneys, John Radin. (Lead trial counsel had since died.) Among other evidence, the State offered the testimony of the then-Jefferson County Prosecutor, Blair Grover. After oral argument on October 25, 1983, the district court ordered a second evidentiary hearing, and on January 3, 1984, ten of the twelve trial jurors were questioned under oath by counsel for both sides. (One of the twelve had since died, and one was not located.)

On January 9, 1984, the court filed an order denying Carter's petition for post-conviction relief, and thereafter, on February 27, 1984, ordered that Carter commence serving his sentence. On March 7, 1984, the court filed an "Addendum" to its

earlier order, further explaining its rationale for denying the petition.

Carter appeals from the denial of his petition for postconviction relief. He asserts that his conviction should be vacated because he was denied reasonable assistance of counsel at trial.

At trial, the jury was presented with inconsistent versions of the shooting. Carter's testimony can be summarized as follows: Tolley arrived at Carter's home intoxicated and began threatening Carter and Carter's wife and infant son with a handgun. Tolley aimed the gun at Carter's wife and stated that he was going to "get" her. Carter ran into his house, grabbed an antique shotgun, loaded it, and shot Tolley. Tolley retreated to his pickup. Tolley then raised his gun out the window of the truck as if to fire, and Carter shot him a second time. Carter reloaded the shotgun and approached the truck to get Tolley's gun and to see how badly Tolley was injured. As Carter neared the truck, Tolley again raised up. Carter shot him a third and final time. Carter then opened the door of the truck and took the gun away from Tolley. Carter's wife screamed at Carter that he was getting fingerprints on the gun and he dropped it on the front yard where it was later found by the investigating officers. Carter then summoned the police. Under this version of the incident Carter claims that his use of deadly force was justified by self-defense.

Deputy Sheriff Johnson, however, testified at trial that Carter stated during the custodial interrogation that Tolley had dropped his gun on the lawn after the first shot was fired. Under this version of the incident, Tolley was unarmed when Carter fired the final shots and Carter's subsequent use of deadly force could not be justified by the doctrine of self-defense.

Carter asserts that trial counsels' failure to object to Deputy Johnson's testimony amounted to a denial of his constitutional right to the effective assistance of counsel.[1] Before we reach the merits of Car-

---

1. No pretrial motion was made to suppress Car-

ter's statements. At trial, during the testimony

ter's ineffective assistance of counsel claim, we will first address the State's two threshold arguments.

## I.

The State first argues that Carter's appeal should be dismissed as untimely. The trial court's order denying Carter's petition for post-conviction relief was filed January 9, 1984. Carter filed his Notice of Appeal from that order on February 27, 1984, 49 days later. The State contends that a petition for post-conviction relief is governed by the 42-day time limit imposed under I.A.R. 14 and, therefore, that Carter's appeal was untimely. Carter contends, however, that the time for review of a final judgment under the Uniform Post-Conviction Act is governed by I.C. § 19–4909, which provides for an appeal within 60 days from the entry of judgment.

When the appellate rules were adopted, statutory amendments were submitted to the legislature in an attempt to resolve any conflicts. Apparently, I.C. § 19–4909 was simply overlooked. The legislature has since acted to eliminate the conflict. Effective July 1, 1985, I.C. § 19–4909 has been amended to provide that the time for appeal in a post-conviction relief action is governed by the rules of this Court. Thus, as of July 1, 1985, the time for appeal is 42 days rather than 60. 1985 Idaho Sess.Laws ch. 75, p. 150. However, when Carter filed this appeal the statute provided that he had 60 days in which to do so. His appeal, filed 49 days after the entry of judgment, was timely under the statute. In view of this conflict and in the interest of justice, we decline the State's request to dismiss Carter's appeal. We note, however, that our ruling is limited to the specific and unique circumstances of this case. We recognize that in matters of procedure and appellate practice this Court derives its power from the constitution rather than the legislature.

The State next argues that the issue of ineffective assistance of counsel is res judicata. The State contends that because the issue of trial counsel's competence was raised before this Court on direct appeal, appellant is precluded from raising it again in a post-conviction proceeding.

As Justice Bakes observed in his concurrence in *State v. Kraft*, 96 Idaho 901, 906, 539 P.2d 254, 259 (1975), "The question of competency of counsel is an extremely complex factual determination which, in all but the most unusual cases, requires an evidentiary hearing for determination. (Citation omitted.) The resolution of those factual issues for the first time upon appeal, based upon a trial record in which competence of counsel was not at issue, is at best conjectural." Justice Bistline, concurring in *State v. Ruth*, 98 Idaho 879, 881, 574 P.2d 1357, 1359 (1978), outlined the quandry facing an appellant with an ineffective assistance of counsel claim:

"If, on appeal, counsel prematurely raises the competency of counsel issue, and gains an adverse determination in this Court, he may very well subject himself to like charges of incompetency—keeping in mind the threat of *res judicata* should the client later seek to have his claim of incompetence of trial counsel heard at a post-conviction proceeding. On the other hand, there is an equal threat of later being told that competency of counsel should have been raised on direct appeal whenever appellant counsel is other than trial counsel."

As one of several issues on direct appeal, Carter asserted that he was denied the effective assistance of counsel at trial. He set forth several alleged deficiencies in sup-

---

of Deputy Johnson, defense counsel objected, and the jury was removed from the courtroom. After hearing argument from both sides on the question of whether Carter's statements were admissible, including a brief voir dire of the witness, the trial judge decided not to rule on the motion to suppress until it was made. The court then adjourned for its noon recess. After lunch, Deputy Johnson was again asked what statements Carter had made during the questioning. Despite the court's prior ruling, defense counsel failed to renew its objection and Johnson proceeded to testify that Carter had stated that Tolley dropped the gun on the front lawn next to the sidewalk in his retreat to his pickup.

port of his claim, including the "failure to request the suppression of certain evidence;" the same deficiency now before us. *See State v. Carter*, 103 Idaho at 923, 655 P.2d at 440.

■ In disposing of Carter's ineffective assistance claim on direct appeal, we simply stated that the alleged deficiencies fell into the area of strategic and tactical choices and that the record was "devoid of any indication that such choices were a result of inadequate preparation or ignorance of counsel." *Id.* "Absent such evidence," we held "it must be presumed that defense counsel's actions were not due to inadequate preparation or ignorance, and that defendant's representation by counsel was competently carried out." *Id.* However, and of crucial importance to the present proceeding, we went on to state that, "If evidence to the contrary is available outside the record, it may be presented only by way of a petition for post-conviction relief...." *Id.* n. 4. This is precisely what appellant has done in the present case. Thus, it would be anomalous for us to hold, after directing appellant that the proper way to pursue his claim was through a petition for post-conviction relief, that post-conviction relief is now barred by res judicata.

## II.

Having disposed of the State's threshold arguments, we now turn to the merits of Carter's ineffective assistance of counsel claim. The gravamen of that claim lies in trial counsel's failure to move to suppress the statements Carter made to Deputy Sheriff Johnson and prosecutor Blair Grover during custodial interrogation. Carter asserts that those statements were obtained in violation of his fifth and sixth amendment rights and that trial counsel's failure to move for their suppression constituted the kind of objectively verifiable attorney error which requires that any resulting conviction be vacated.

■ The sixth amendment to the United States Constitution provides that an accused person shall "have the assistance of counsel for his defense." This right is made obligatory on the states through the due process clause of the fourteenth amendment. *Giddeon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).[2] In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the government may not use statements obtained from the accused during custodial interrogation at trial unless the accused was informed of his right to silence and afforded a continuous opportunity to exercise that right. In order to secure the right to silence, the court expanded the sixth amendment right to counsel.

"[T]he right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today." 384 U.S. at 469, 86 S.Ct. at 1625.

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead." *Id.* at 471–72, 86 S.Ct. at 1626–27.

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475, 86 S.Ct. at 1628.

The Court further held that an accused could invoke his right to counsel by indicat-

---

**2.** The accused has a corresponding right under art. 1, § 13 of the Idaho Constitution.

ing "in any manner and at any stage of the process" that he desired to consult with an attorney. 384 U.S. 444–45, 86 S.Ct. at 1612–13. Nine years later, in *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Court declared that *Miranda* protected the accused's "right to cut off questioning" and that this right must be "scrupulously honored" by the police. 423 U.S. at 104, 96 S.Ct. at 326.

In the present case the appellant asserts that his right to counsel was not "scrupulously honored." He contends that in response to his request to consult with an attorney he was informed that the prosecutor, Blair Grover, could be his attorney.

"Q. What did you do upon entering that room? [The room where the interrogation took place.]

"A. I requested to call an attorney.

"Q. And who did you make that request of?

"A. Well, I made the request known that I wanted to call an attorney.

" . . .

"Q. When you asked for an attorney, what were you advised?

"A. That Blair Grover could be my attorney.

"Q. And what did you say to that?

"A. I said, 'You're an attorney?' And Mr. Johnson said, 'Yes. He's an attorney. He can help you out.' And Blair said, 'Why don't you tell me a little bit about what happened'?

"Q. What did you do then?

"A. I made a short statement to him.

" . . .

"Q. So, you requested an attorney and made a statement to the sheriff and the prosecutor?

"A. Yes.

"Q. Did you understand him to be the Prosecutor?

"A. No, not when he told me he could help me out. When he told me that he could help me out, I had full confidence in this stranger, Blair Grover.

"Q. At this time and that point in your life, did you know what a prosecuting attorney was?

"A. No, no."

The prosecutor testified that Carter was "agitated and excited" at the time of the interview, that Carter "asked me if I could represent him," but that he, Grover, had immediately explained that he could not as he was the prosecuting attorney. Grover did state, however, that Carter again asked whether Grover could represent him.

"Q. Do you recall Joe at any time asking for an attorney?

"A. No. The only thing he said was two times that I mentioned to you: Whether I was his attorney.

"Q. Well, don't you perceive that as somehow requesting an attorney?

"A. No.

"MR. DUNN: Well, your Honor, I would say that's speculation at this point in time.

"THE COURT: No, he may ask.

"Q. BY MR. LEE: You don't perceive that as him requesting an attorney?

"A. No.

"Q. Why?

"A. Because I explained to him that I was a Prosecutor, and he seemed satisfied with that.

"Q. He was satisfied to the point that he had to ask you again whether you'd represent him?

"A. Yes, he did ask me a second time.

"Q. Well, he must be confused, don't you think?

"A. Certainly he asked I suppose for clarification when he asked me the second time.

"Q. And you didn't perceive that as a request for an attorney?

"A. No. He was not asking for an attorney. His question was: Could I represent him?

"Q. Well, if I were to ask you 'Would you represent me?' Is that a request for an attorney?

"A. Well, he didn't ask me would I represent him. He asked me could I represent him.

"Q. He asked that more than once?

"A. Twice."

John Radin, one of Carter's trial counsel, testified that Grover admitted to him that Deputy Sheriff Johnson had represented to Carter that Grover was Carter's attorney, but that the representation was made as a joke and immediately clarified.

"A. [By Mr. Radin] ... Joe said that Wayne Johnson introduced Blair Grover as his attorney, Joe Carter's attorney. Joe stated that at that point he was interviewed or interrogated by the two of them, that he talked to them at that point, and that's the nature of what Joe told me.

"Q. Did you ever follow up on that?

"A. I did in the regard that I went to talk to Blair Grover shortly thereafter, and I asked Blair if this, in fact, had occurred.

"Q. And what did Mr. Grover say to you?

"A. Blair told me that—as I recall it, to the effect that, 'That darn old Wayne Johnson, he made a joke,' or 'Darn Wayne Johnson, he did introduce me as Joe's attorney, and I immediately told Joe: 'No, Joe, I'm Blair Grover, I'm the Prosecutor.'

Blair said that they talked with Joe for a short period of time. At that point Blair detected that Joe was still confused about whether or not Blair was his attorney or the Prosecutor. Blair said, 'I noticed that he was still confused, so a second time I told him, 'Hey Joe, just so there's no misunderstandng. I'm Blair Grover. I'm the Prosecutor.' That's what Blair acknowleded to me."

■ Whether or not Carter specifically requested an attorney, his statements asking if the prosecutor was his attorney constituted, at the very least, an equivocal request for counsel. We agree with the recent holding of our Court of Appeals that whenever an accused makes an equivocal request for an attorney during custodial interrogation, questioning on the subject matter of the interrogation must immediately cease and further questioning must be limited to clarification of the request. *State v. Moulds*, 105 Idaho 880, 888, 673 P.2d 1074, 1082 (Ct.App.1983). *See also, Nash v. Estelle*, 597 F.2d 513 (5th Cir.1979), *cert. denied*, 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979); *U.S. v. Riggs*, 537 F.2d 1219 (4th Cir.1976). If clarification reveals a present desire for the assistance of counsel all interrogation must cease until counsel is provided. Furthermore, no statement taken after the request is made and before it is clarified is admissible at trial.

■ In this case, once Carter asked whether the prosecutor was his attorney, further questioning should have been limited to the determination of whether he did, or did not, presently desire the assistance of counsel. Instead, the request was ignored and questioning continued in violation of his fifth and sixth amendment rights. Thus, Carter's statements made during the custodial interrogation were inadmissible.

■ As was indicated above, trial counsel failed to move to suppress these statements. Carter asserts that this amounted to a failure to provide reasonably competent assistance of counsel. The right to counsel under both the sixth amendment to the United States Constitution and art. 1, § 13 of the Idaho Constitution encompasses the right to effective counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Tucker*, 97 Idaho 4, 539 P.2d 556 (1975).

■ The Supreme Court recently set out the test for analyzing an ineffective assistance of counsel claim under the sixth amendment.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland, supra*, 104 S.Ct. at 2064.

The Court outlined a two-pronged test that the defendant must meet in order to prevail on an ineffective assistance of counsel claim. First, the defendant must show that counsel's performance was deficient, that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." 104 S.Ct. at 2064. Second, the defendant must show that counsel's errors prejudiced the defense. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 104 S.Ct. at 2068.

■ The present case is very similar to *State v. Douglas*, 97 Idaho 878, 555 P.2d 1145 (1976). In *Douglas*, the sheriff and a deputy questioned the defendant, a departmental employee suspected of embezzlement, without first giving her *Miranda* warnings. At trial, the deputy testified, without objection from defendant's counsel, that the defendant had orally confessed during that questioning. On appeal, we held that counsel's failure to object to the deputy's testimony coupled with some inconsistent statements he made to the jury, had denied defendant her constitutional right to counsel. In the instant case, as in *Douglas*, trial counsel's inexplicable failure to object to the introduction of extremely damaging testimony was an error "so serious that counsel was not functioning as the counsel guaranteed by the sixth amendment," and thus the first prong of the *Strickland* test is met.

As to the second prong, there can be little doubt that counsels' failure to move to suppress Carter's statements prejudiced his defense. On direct appeal, this Court, in discussing whether there was sufficient evidence to support the jury verdict, emphasized that although Carter claimed Tolley was raising up with his gun when he, Carter, fired the fatal shot, "there was evidence from which the jury could have found that Tolley dropped the gun before entering the truck." *State v. Carter*, 103 Idaho at 919, 655 P.2d at 436. That evidence was Deputy Johnson's testimony that Carter stated during the interrogation that Tolley had dropped the gun on the sidewalk after the first two shots were fired. Thus, had Carter's counsel been effective, the evidence on which this Court relied in sustaining Carter's conviction would have been inadmissible.

We note that Deputy Johnson also testified that Carter volunteered the same statement, regarding Tolley's dropping of the gun, at the scene of the incident. Thus, an argument can be made that because that testimony was admitted, the subsequent admission of Carter's statements during custodial interrogation was harmless error. Such an argument would be unpersuasive for two reasons, however. First, the record indicates a substantial question about whether that statement was actually made. Carter denies making it and neither the police report filed after the incident nor Deputy Johnson's affidavit mention any such statement. It was not until the colloquy outside the presence of the jury, when defense counsel initially objected to Deputy Johnson's testimony, that Johnson asserted the statement was also made at the scene of the incident. Second, even assuming the statement was made and was not suppressable, its presence does not make the admission of Carter's later statements harmless. Admission of the later statements would have a cumulative effect on the jury. In fact, the State conceded both in its brief and at oral argument that in this case, where the evidence that Tolley dropped the gun was the only evidence contradicting Carter's claim of self-defense, suppression of the disputed evidence might well have affected the outcome of the trial. Our analysis is also consistent with *Strickland* wherein the Supreme Court noted that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." 104 S.Ct. at 2069.

In sum, we conclude that Carter has met his burden of showing that he was denied the reasonably competent assistance of counsel at trial. He is therefore entitled to

a new trial free from the prejudicial effect of the inadmissible statements.

Reversed and remanded.

Costs to appellant.

No attorney fees on appeal.

SHEPARD and HUNTLEY, JJ., concur.

SHEPARD, Justice, specially concurring.

I concur in the opinion, but still adhere to the views I expressed in my dissent in the first case.

BAKES, Justice, dissenting:

The appellant's appeal from the trial court's denial of his petition for post-conviction relief was not timely filed and, accordingly, this appeal should be dismissed.

The trial court's order was filed on January 9, 1984. The notice of appeal was filed on February 27, 1984, 49 days after the entry of the trial court's order. I.A.R. 14 requires that appeals from the district court shall be filed within 42 days from the date evidenced by the filing stamp of the clerk of the court on the order appealed from. I.A.R. 21 further provides that "the failure to physically file a notice of appeal ... with the district court ... within the time limits prescribed by these rules, *shall be jurisdictional and shall cause automatic dismissal of such appeal* or petition, upon the motion of any party, or upon the initiative of the Supreme Court." (Emphasis added.) The notice of appeal not having been timely filed, the appeal should be dismissed.

The appellant asserts that the appeal time from the denial of a post-conviction relief proceeding is 60 days, citing I.C. § 19–4909. However, that section, which was enacted in 1967, was repealed by the 1977 amendment to I.C. § 13–201, which provided that "an appeal may be taken to the Supreme Court from a district court in any civil action by such parties from such orders and judgments, and within such times and in such manner as prescribed by

rule of the Supreme Court." An application for post-conviction relief is a civil action. *State v. Bearshield*, 104 Idaho 676, 662 P.2d 548 (1983); *State v. Goodrich*, 104 Idaho 469, 660 P.2d 934 (1983).

Accordingly, the motion to dismiss the appeal should be granted and the appeal dismissed.

McFADDEN, J. pro tem., concurs.

McFADDEN, Judge Pro Tem., dissenting.

I dissent from the foregoing opinion for the reason that I am of the conclusion that the state's motion to dismiss the appeal should have been granted on the basis that the appeal was not timely filed.[1]

It is to be recalled that the trial court's Order on Petition for Post Conviction Relief was filed in the district court clerk's office on January 9, 1984. The appellant's Notice of Appeal was not filed until February 27, 1984, some 49 days after the entry of the trial court's order. I.A.R. 14 requires that appeals from the district court "may be made only by physically filing a notice with the clerk of the district court within 42 days from the date evidenced by the filing stamp of the clerk of the court on any judgment, order or decree of the district court appealable as a matter of right in any civil or criminal action."

Following the filing of the Notice of Appeal the state moved to dismiss the appeal on two grounds: (1) the appeal was not timely filed; (2) the basis of appellant's appeal, *i.e.*, ineffective assistance of counsel, had previously been decided adversely to appellant in the prior appeal, *State v. Carter*, 103 Idaho 917, 655 P.2d 434 (1981), and hence the doctrine of *res judicata* barred further consideration of that issue. Since I reach the conclusion that the appeal was not timely filed, it is unnecessary to consider the second issue.

Appellant counters the state's contention that the appeal was untimely filed, asserting two grounds: (1) I.C. § 19–4909, which provides that an appeal from a judgment in

---

**1.** At the outset I wish to point out that present counsel were apparently brought into this case subsequent to the appeal having been taken and

had nothing to do with this case at the trial level, the first appeal, the post-conviction proceedings, nor taking of the appeal.

a post-conviction proceeding may be made within 60 days of the entry of the judgment, and hence was timely filed within the provisions of that statute; (2) that on March 7, 1984, the district court entered an "addendum" to the previous Order on Petition for Post-Conviction Relief, and hence in any event the notice of appeal was timely filed. Appellant, in support of this second contention, submitted to this Court an affidavit of the appellant's counsel that filed the notice of appeal from the order filed January 9, 1984, wherein counsel set out the ex parte contacts he made with the trial judge leading to the issuance of the "addendum" order.

The issue is directly placed before this Court as to whether the provisions of Idaho Appellate Rule 14, providing that an appeal must be taken within 42 days of entry of a judgment, or the provisions of I.C. § 19–4909, providing an appeal must be taken within 60 days of entry of judgment, control in this appeal.

I am of the opinion that the provisions of I.A.R. 14 govern. I.A.R. 14 provides in pertinent part:

"These rules shall take effect on July 1, 1977, and thereafter all laws and rules of appellate procedure in the Supreme Court in conflict therewith shall be of no further force or effect...."

An application for post-conviction relief is civil in nature. *State v. Bearshield,* 104 Idaho 676, 662 P.2d 548 (1983); *State v. Goodrich,* 104 Idaho 469, 660 P.2d 934 (1983); Idaho Appellate Rule 11(a)(1) governs appeals from an order denying post-conviction relief. It provides in part that:

"An appeal as a matter of right may be taken to the Supreme Court from the following judgments and orders:

(a) Civil Actions. From the following judgments and orders of a district court in a civil action:

(1) Final judgments and decrees including decisions by the district court dismissing, affirming or reversing or remanding on appeal."

I.C. § 19–4907 provides for a hearing on the post-conviction hearing in proper case and states: "All rules and statutes applica-ble in civil proceedings including pretrial discovery and appellate procedures are available to the parties." It also provides for an order with findings of fact, conclusions of law, and that such order is a final judgment. It thus follows that the appeals in such cases are governed by the Idaho Appellate Rules.

I.C. § 1–212 recognizes the inherent power of the Supreme Court to make rules governing procedure in all courts of Idaho. I.C. § 1–213 provides:

"The Supreme Court shall prescribe, by general rules, for all the courts of Idaho, the forms of process, writs, pleadings and motions, the manner of service, time of appearance, and the practice and procedure in all actions and proceedings. Said rules shall neither abridge, enlarge nor modify the substantive rights of any litigant."

By this statute the legislature placed with the Supreme Court the sole authority to make rules governing procedural matters which do not abridge, enlarge or modify the substantive rights of any litigant. In 1977, the legislature adopted I.C. § 13–201 which specifically dealt with the time for taking of appeals; it provided:

"An appeal may be taken to the Supreme Court from a district court in any civil action by such parties from such orders and judgments and within such times and in such manner as prescribed by Rule of the Supreme Court."

By enactment of this statute, the legislature effectively repealed the effectiveness of the 60-day time for appeal of I.C. § 19–4909, relegating the time for taking of appeals in civil actions to the rulemaking authority of the Supreme Court.

This Court, in the case of *R.E.W. Constr. Co. v. District Court of the Third Jud. Dist.,* 88 Idaho 426, 400 P.2d 390 (1965), affirmed the rulemaking authority of this Court in civil cases. In *State v. Currington,* 108 Idaho 539, 700 P.2d 942 (1985), this Court also recognized the rulemaking authority of this Court when it conflicted with a statutory enactment. In *State v. Currington, supra,* this Court quoted from *State v. Smith,* 84 Wash.2d 498, 527 P.2d

674, 676–77 (1974), where that court discussed the line of demarcation between "substantive" and "procedural" matters. For other cases involving conflicts between statutory criminal provisions and Supreme Court rules in criminal cases in matters of procedure, *see State v. Lewis*, 107 Idaho 616, 691 P.2d 1231 (1984); *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979); *State v. Yoder*, 96 Idaho 651, 534 P.2d 771 (1975).

Clearly under the record of this case, the Supreme Court rule as concerning the time for taking of an appeal from a final order in a post-conviction proceeding is governed by I.A.R. 14.

The final question to be considered is whether the "addendum" to the Order on Petition for Post-Conviction Relief effectively extended the time within which the appellant could take his appeal. It is my conclusion that it did not.

Idaho Appellate Rule 14 authorizes that an appeal may be taken within 42 days of the entry of judgment appealed from. It also provides:

> "The time for an appeal from such judgment, order or decree is terminated by the filing of a timely motion which, if granted, could affect the findings of fact, conclusions of law or judgment (except motions under Rule 60 of the Idaho Rules of Civil Procedure or motions regarding costs or attorney fees), in which case the appeal period commences to run upon the date of the filing stamp on the order deciding such motion."

The Idaho Rules of Civil Procedure authorize the filing of a motion for new trial or amendment of judgment (I.R.C.P. 59(a)); and a motion to alter or amend a judgment (I.R.C.P. 59(e)). The record before this Court reflects no motion for a new trial or amendment of judgment or reconsideration (which, while not recognized as a valid motion, in cases has been treated as a motion for amendment) ever having been filed in the lower court. I.R.C.P. 5(a) requires service of a motion on the opposing party, and that again does not appear of record. The most that appears is an affidavit, dated August 16, 1984, by appellant's attorney who represented appellant at the post-conviction proceeding. There the attorney recites that he called the district judge in January, 1984, subsequent to execution of the Order on Petition for Post-Conviction Relief, and asked that the judge reconsider his decision, and further that he and the judge had "further decision (sic—discussion?) about his original ruling from time to time and on March 5, 1984, I provided him with more authority concerning our position the errors were not harmless." This is a far cry from the filing of a motion with the court and service of it upon opposing counsel, the procedure required in order to secure the benefits of a tolling of the time for the taking of an appeal as provided by I.A.R. 14 which first requires the "filing of a timely motion." The contention of the appellant in this regard is without merit.

The appeal should be dismissed.

BAKES, J., concurs.