981 P.2d 738

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Juan R. NUNEZ, Jr., Defendant–Appellant.**

No. 23652.

Supreme Court of Idaho.

June 9, 1999.

Rehearing Denied July 26, 1999.

Andrew Parnes, Ketchum, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

WALTERS, Justice.

Juan Nunez was employed as a police officer and agent of the Tri–County Drug Task Force when the offices of the Tri–County Drug Task Force were the target of a burglary in February 1995. As a result of the burglary, a full accounting of the evidence lockers was made which revealed missing and unaccounted for drugs and money. Nunez and another officer of the drug task force, Donald L. Walden, were indicted in May of 1996. Nunez was arraigned four days later and he pled not guilty to all counts charged in the indictment.

Count I of the indictment charged Nunez with racketeering in violation of I.C. § 18–7804(c) through a pattern of racketeering consisting of forty separate acts of theft which occurred between 1990 and 1995, by

committing the burglary of the Tri–County and Magic Valley Drug Task Force offices on or about January 30, 1995, and in the presentation of fraudulent accounts. Count II charged Nunez with the misuse of public money, which money was either missing and unaccounted for or used for unauthorized purpose. Counts III and IV charged Walden and Nunez respectively with falsifying public records as police officers. Four additional counts charged Nunez with separate sales tax violations, and the final count charged Nunez with conspiracy to destroy, alter, or conceal evidence, alleging the burglary of the drug task force offices as one of two, specified overt acts committed in furtherance of the conspiracy. The indictment was twice amended before trial.

Nunez' case, which was severed from the case against his co-defendant Walden, proceeded to trial on October 8, 1996. A jury returned a verdict of guilty on the charges of racketeering, misuse of public money, four sales tax violations and conspiracy to alter or destroy evidence. Nunez was acquitted on the charge of falsifying records. According to the special verdict form, the jury unanimously found that Nunez was guilty of more than two predicate acts constituting a pattern of racketeering, identified in the second amended indictment as seven individual thefts of various drugs, paraphernalia and money being held by the Task Forces.

Nunez filed a post-trial motion for acquittal on November 5, 1996, and a motion for mistrial or for a new trial on December 16, 1996. The district court denied the motions on January 2, 1997. Sentencing took place on January 13, 1997, and an amended judgment of conviction was entered, from which Nunez appealed. Nunez then filed an I.C.R. 35 motion, which was denied in part and granted in part, reducing the fixed portion of his sentence by six months on the misuse of funds charge. Nunez filed an amended notice of appeal.

## I. ISSUES PRESENTED ON APPEAL

Nunez asserts the following on appeal:

1. With respect to Count I of the indictment, did the state charge a proper racketeering "enterprise" under I.C. § 18–7803 and was the jury correctly instructed on the definition of conducting an enterprise?

2. With respect to Count II of the indictment, did the trial court err in failing to instruct the jury that it must unanimously agree on the acts which constituted a violation of the misuse of public monies under I.C. § 18–5701?

3. Were the one-year sentences on the sales tax violations in Counts IV through VII illegal in that the indictment and the instructions referred to misdemeanor offenses?

4. Was the evidence sufficient to convict on three of the sales tax violations?

5. Was Nunez' sentence as a felony on Count VIII, conspiracy to commit a misdemeanor, an illegal sentence where Nunez was charged with and convicted of a misdemeanor?

6. Was the evidence sufficient to support the guilty verdict on Count VIII?

7. Did the district court abuse its discretion in denying Nunez' motion for a continuance?

8. Was Nunez deprived of the effective assistance of trial counsel when counsel failed to request severance of the sales tax violations?

9. Was Nunez deprived of the effective assistance of trial counsel when counsel in his direct examination of Nunez "opened the door" to cross-examination on instances of prior, unrelated misconduct as a police officer?

10. Does I.C. § 18–301, which was repealed after the crimes in this case had been committed require reversal of the conviction and sentence on Count II (misuse of public monies) which was based on acts identical to those underlying the conviction on Count I (racketeering)?

11. Did cumulative errors by trial counsel render his performance ineffective under the federal and state constitutions, mandating reversal of the convictions?

## ANALYSIS

### 1. Racketeering Count

Nunez argues that the racketeering count was not properly charged and that the flaw in the indictment was repeated in the jury instruction on the racketeering charge, such that his conviction and sentence on the racketeering charge should be reversed. Nunez asserts that he and his co-defendant should have been charged as "individuals operating the illegal enterprise" rather than as persons employed by the drug task forces who, as members of those enterprises, engaged in a pattern of racketeering activity. In effect, he argues that the "enterprises" cannot be both the instrument through which the racketeering was conducted and the victim of the racketeering.

The indictment charged Nunez with being employed by or associated with the enterprises, defined as the Task Forces, and engaging in a pattern of racketeering activity. The charge to the jury on the racketeering count, Instruction No. 26, required proof beyond a reasonable doubt that Nunez was employed by or associated with the enterprises and that he participated, either directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity. The instruction evidently was intended to comport with the provisions of I.C. § 18–7804 detailing the activities punishable under Idaho's Racketeering Act,[1] whose content and structure parallel those of its federal counterpart, RICO.[2]

As used in the Act, the term "enterprise" encompasses any sole proprietorship, partnership, corporation, business, labor union, association or other legal entity or any group of individuals associated in fact although not a legal entity, and includes illicit as well as licit entities. I.C. § 18–7803(c). "A pattern of racketeering activities" means engaging in at least two predicate acts of racketeering conduct, which are interrelated by distinguishing characteristics and are not isolated incidents, within five years of each other, one of which must have occurred after the effective date of the Act. I.C. § 18–7803(d). The instructions to the jury included these concepts.

Subsection (c) of Idaho Code § 18–7804, like 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the affairs of such enterprise by engaging in a pattern of racketeering activity." Interpreting the meaning of the federal racketeering statute, the United States Supreme Court distinguished the term "enterprise" used in subsections (a) and (b) from the "enterprise" in subsection (c). The Court held:

> The "enterprise" referred to in subsections (a) and (b) is something acquired through the use of illegal activities or by money obtained from illegal activities. The enterprise in these subsections is the victim of unlawful activity.
>
> By contrast, the "enterprise" in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity.

*National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 259, 114 S.Ct. 798, 804, 127 L.Ed.2d 99 (1994). The Court has also held that "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. *Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525, 536 (1993). "In sum ... one must participate in the operation or management of the enterprise itself." *Id.* at 185, 113 S.Ct. at 1173, 122 L.Ed.2d at 540.

Subsection (c) defines the relationship as "more than merely some connection or even a 'substantial nexus' between a lawful enterprise and the prohibited pattern of racketeering." *United States v. Webster,* 639 F.2d 174, 185 (4th Cir.), *cert. denied sub nom, Christian v. United States,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981), *modified in*

---

1. I.C. § 18–7801 (1981).

2. Racketeer Influenced and Corrupt Organizations chapter of the Organized Crime Control Act of 1970 (OCCA), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961—1968 (1988 ed. and Supp. IV).

18

*part,* 669 F.2d 185 (4th Cir.1982). According to several federal circuit courts, a defendant working for a legitimate enterprise, who commits racketeering acts while on the business premises does not establish that the affairs of the enterprise have been conducted "through a pattern of racketeering activity." *United States v. Jannotti,* 729 F.2d 213, 226 (3d Cir.1984), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984); *United States v. Cauble,* 706 F.2d 1322, 1332 (5th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Webster, supra.* The predicate acts must have been committed in the conduct of the enterprise's affairs. *United States v. Field,* 432 F.Supp. 55, 58 (S.D.N.Y.1977). *Accord, United States v. Swiderski,* 593 F.2d 1246 (D.C.Cir.1978), *cert. denied sub nom, McGowan v. United States,* 441 U.S. 933, 99 S.Ct. 2055, 60 L.Ed.2d 662 (1979); *United States v. Dennis,* 458 F.Supp. 197 (E.D.Mo. 1978); *United States v. Scalzitti,* 408 F.Supp. 1014 (W.D.Pa.1975).

> Instead, the government must show that a person "is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise; or ... the predicate offenses are related to the activities of that enterprises." *United States v. Provenzano,* 688 F.2d 194, 200 (3d Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982) (*quoting United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981)).

*Jannotti, supra* at 226. As stated by another circuit court, the issue is whether there was sufficient evidence of a connection between the defendant's racketeering activity and the affairs of the enterprise to support a jury finding that the defendant directly or indirectly conducted or participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity. *See U.S. v. Blackwood,* 768 F.2d 131 (7th Cir.1985), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985) (holding sufficient evidence from which a jury could find that the defendant, a police officer, sought to influence the disposition or affect the handling of criminal cases through solici-

tation of bribes, falsification of the Circuit Court (the "enterprise") records, use of Circuit Court offices and equipment and contact with Circuit Court judges).

■ In the instant case, the instructions to the jury failed to set forth the requirement that before Nunez could be found guilty of racketeering, the evidence would have to show beyond a reasonable doubt that Nunez had some part in directing the affairs of the enterprise, or that he was participating in the operation or management of the enterprise, while conducting a pattern of racketeering activity. Clearly, Nunez' theft of drugs and money held by the Task Forces was not conducted in the course of Nunez' duties as an agent of the Task Forces. Nunez' job responsibilities were to investigate reports regarding drug use in the Magic Valley and to carry out drug buys which were often followed up with search warrants and arrests leading to the prosecution of the arrestees. Nunez was not conducting his employer's affairs when he committed his crimes. The mere fact that Nunez carried out his scheme of embezzlement by stealing money and drugs from the Task Forces does not establish the requisite relationship between the criminal acts and the affairs of the enterprise. When the interrelationship element is missing because the predicate acts are unrelated to the activities of the enterprise, there is a failure of proof of a violation under subsection (c). *United States v. Provenzano,* 688 F.2d at 200. Accordingly, we set aside the racketeering conviction for illegal conduct by Nunez which was not racketeering activity, but was theft by an employee.

## 2. Misuse of Public Monies Count

■ Nunez next contends that the district court should have instructed the jury that it had to unanimously agree on the underlying act on which the misuse of public monies conviction was based. Nunez argues that by not requiring specificity in the verdict, the court denied him his right to a unanimous verdict because the jury may have disagreed as to which of the charged incidents Nunez had committed.

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Barker,* 123 Idaho 162, 165, 845 P.2d 580, 583 (Ct.App. 1992), *citing State v. Tomes,* 118 Idaho 952, 801 P.2d 1303 (Ct.App.1990). If the questioned instruction is a correct statement of the law and if the court instructed the jury that it would have to find all the elements of the crime charged to be proven beyond a reasonable doubt, the appellate court generally will not find error in the language of the instruction. *Id.*

Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict. *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), *citing McKoy v. North Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 1236–37, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring). Under Idaho Code § 18–5701, a defendant can be found guilty of misuse of public money for any number of acts proscribed. The statute provides alternative means of satisfying the *actus reus* element of the single offense of misuse of public money.

In Nunez' case, the jury was instructed that it had to find beyond a reasonable doubt that sometime between 1990 and 1995 Nunez had either appropriated money to his own use or failed to keep money in his possession until paid out as authorized by law. The jury was also instructed that its verdict had to be unanimous and that it was to consider each count separately and reach a verdict uninfluenced by its decision on any other count. We presume that the jury followed the court's instructions in concluding unanimously that Nunez was guilty of the crime, not the underlying facts that establish the elements of the crime. *See Schad v. Arizona, supra.* The judgment of conviction on Count II will be affirmed.

## 3. Sales Tax Violations

Nunez was charged with four counts of violating the Idaho sales tax law by using his employer's sales tax exemption to avoid payment of the sales and use tax when he purchased an automobile engine (Count IV) and certain automotive parts (Count V) to be installed in his personal automobile, and to purchase artwork (Counts VI and VII) for his own use and purposes.

Nunez claims that as to these violations, the jury was instructed on the elements of a misdemeanor offense. The jury found Nunez guilty of "wilfully failing to pay such tax," as described in the jury instructions, but the district court sentenced Nunez to a felony penalty on each count. The district court also denied a later motion to correct the sentences. Nunez argues on appeal, as he did in his I.C.R. 35 motion to the district court, that his sentence exceeds the maximum allowable penalty for a misdemeanor offense; therefore, he is entitled to a remand for resentencing on these counts. We agree.

Nunez was charged with violating I.C. § 63–3075(b) and I.C. § 63–3619 in that he "evaded, defeated or avoided paying sales tax" on four separate personal purchases. The prosecution presented evidence that Nunez used the tax exemption number belonging to the drug task force while purchasing car parts which were installed in his personal vehicle and to purchase art prints that Nunez considered his personal property. The prosecution requested jury instructions reciting that the jury must find that Nunez "evaded, defeated or avoided paying" the sales tax. These instructions were rejected as "covered" by the district court. The instructions given to the jury required the jury to find only that Nunez "wilfully failed to pay such tax," which defines the misdemeanor offense.

Analyzing the federal counterpart to a penalty statute very similar to I.C. § 63–3075, the United States Supreme Court held that the misdemeanor and felony provisions contained separate and distinct elements and that without more, a violation of the misdemeanor provision does not constitute a violation of the felony provision. *State v. Gilbert,* 112 Idaho 805, 810, 736 P.2d 857, 862 (Ct. App.1987), *citing Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). The Court concluded: "Wilful but passive neglect of the statutory duty may constitute the lesser offenses, *but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means*

*lifts the offense to the degree of felony.*" *Id.*, quoting *Spies*, 317 U.S. at 497–99, 63 S.Ct. at 367–68, 87 L.Ed. at 422–23 (emphasis added). The Court of Appeals adopted this distinction with respect to the Idaho statute.

 As a rule, the trial court is required to give pertinent instructions by which the jury may be correctly informed with respect to the nature and elements of the crime charged and any essential legal principles applicable to the evidence admitted. *State v. Johnson*, 126 Idaho 892, 895, 894 P.2d 125, 128 (1995), *citing State v. Beason*, 95 Idaho 267, 275, 506 P.2d 1340, 1348 (1973). In this case, only an instruction specifying the elements of a misdemeanor sales tax violation was provided to the jury.[3] The jury was not instructed to find the element of "evading, defeating or avoiding" the sales tax, which raises the offense to a felony as was charged in the second amended indictment. Because the instruction on the misdemeanor sales tax violation did not define the crime as a lesser included offense of a felony sales tax violation,[4] the jury was not asked to consider first whether the evidence was sufficient to find the defendant guilty of the felony offense before it determined that Nunez was guilty of the lesser, misdemeanor offense. *See* I.C. § 19–2132(c). Accordingly, Nunez should have been sentenced only for misdemeanor convictions on Counts IV, V, VI, and VII of the second amended Indictment. The case will be remanded for this purpose.

 As a related issue, Nunez questions the sufficiency of the evidence to support the jury's verdicts on these same counts. Where there is competent evidence to sustain the verdict, this Court will not reweigh the evidence. A jury's verdict will not be set aside if there is substantial evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. On appeal, where a defendant stands convicted, the evidence is viewed in the light most favorable to the prosecution and the reviewing court is precluded from substituting its judgment for that of the jury as to the credibility of the witnesses, the weight of the evidence and the reasonable inferences to be drawn from the evidence.

*State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996) (citations omitted). We have reviewed the record under the appropriate standards of review and conclude that the evidence of the alleged sales tax violations is sufficient to support the verdicts.

### 4. Conspiracy to Destroy, Alter, or Conceal Evidence

 Nunez was charged with and found guilty of conspiring to wilfully destroy, alter, or conceal evidence with the intent to prevent it from being produced, used or discovered as evidence upon any trial, proceeding, inquiry or investigation in violation of I.C. § 18–2603. He was sentenced on this charge to the custody of the board of corrections for five years. He argues on appeal that the evidence was insufficient for the jury to convict him of conspiracy to destroy evidence. He also argues that, having been convicted of misdemeanor conspiracy, he was illegally sentenced to imprisonment in the penitentiary.

The record clearly discloses that Nunez provided false information through an informant. That conduct was asserted as an overt act supporting the conspiracy to commit the crime of destruction, alteration or concealment of evidence. We conclude that the jury's verdict on the conspiracy count is supported by substantial evidence and, accordingly, we affirm the conspiracy conviction. We vacate the sentence, however, because the record is equally clear that the conspiracy charge contained in the indictment and in the instructions to the jury defined a misdemeanor offense and failed to include the statutory language which would

---

3. There is no invited error, as the state asserts, when defense counsel submitted improper instructions that were ultimately given.

4. Idaho Code § 19–2132 requires the trial court, providing there is evidence, to instruct the jury on "any offense, the commission of which is

necessarily included in that with which the defendant is charged in the indictment." *State v. Bolton*, 119 Idaho 846, 849, 810 P.2d 1132 (Ct. App.1991), *citing State v. Beason*, 95 Idaho 267, 276, 506 P.2d 1340, 1349 (1973); I.C.R. 31(c).

elevate the crime to felony status.[5] We remand the conspiracy conviction for resentencing as a misdemeanor.

### 5. Motion to Continue the Trial

Nunez contends that the district court abused its discretion in denying his motion to continue the trial. He argues that the district court's stated reasons for denying the continuance had nothing to do with the grounds asserted but had more to do with the court's desire to proceed with the case against Nunez before trying co-defendant Walden's case, even though Walden intended to exercise his speedy trial rights.

■■■■ The decision whether to grant a continuance rests within the discretion of the trial judge. *State v. Ward*, 98 Idaho 571, 569 P.2d 916 (1977). To warrant reversal, the defendant must show prejudice from the denial of the request for a continuance. *United States v. Pope*, 841 F.2d 954, 957 (9th Cir. 1988). Unless an appellant shows that his substantial rights have been prejudiced by reason of a denial of his motion for continuance, appellate courts can only conclude that there was no abuse of discretion. *State v. Laws*, 94 Idaho 200, 203, 485 P.2d 144, 147 (1971). Where the denial of a motion to continue is attacked on the basis of late disclosure or discovery of evidence, the alleged tardiness of the disclosure must be shown to so prejudice the defendant's preparation of his case that a fair trial was denied. *State v. Spradlin*, 119 Idaho 1030, 1034, 812 P.2d 744, 748 (Ct.App.1991) (citations omitted). To prove prejudice, a defendant must show that there is a reasonable probability that, but for the late disclosure or discovery of evidence, the result of the proceeding would have been different. *Id., citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■■■■ There is no explanation in the record or advanced in appellant's brief as to how Nunez was prejudiced from the district court's denial of his motion. At oral argument, counsel responded to a question from the Court that the record did not show that the discovery had not been completed when the trial started. The denial of the motion to continue the trial was within the bounds of discretion granted to the district court and thus is affirmed.

### 6. Ineffective Assistance of Counsel

Nunez raises several claims demonstrating that he was denied the effective assistance of counsel due under the federal and state constitutions. Nunez contends that counsel (a) should have pursued a motion to sever the four sales tax violation counts; (b) should not have "opened the door" during Nunez' direct examination for the prosecutor to inquire into the reasons Nunez left his prior law enforcement jobs; (c) should have objected to the admission of Nunez' answers on the grounds that the evidence was more prejudicial than probative; and (d) should have objected to the prosecutor's closing argument linking Nunez' misconduct in his prior employment to the crimes charged in the instant case. Lastly, Nunez asserts that cumulative errors by trial counsel rendered his performance ineffective and mandate reversal of Nunez' convictions.

■■■■ A defendant who alleges ineffective assistance of counsel must meet a two-level test, proving first that counsel's performance was deficient and, second, that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. To establish that counsel's representation has been so defective as to render it ineffective, the petitioner must show that counsel's performance fell below a standard of "competence demanded of attorneys in criminal cases." *Id.* The petitioner must overcome a presumption that counsel was competent and that counsel's performance was within the wide range of reasonable professional assistance—that is, "sound trial strategy." *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). To prove prejudice, the petitioner must show a reasonable probability that, but for the attorney's inadequate

---

5. The statute defines this violation as a misdemeanor "unless the trial, proceeding, inquiry or investigation is criminal in nature and involves a felony offense, in which case the person is guilty of a felony." I.C. § 18–2603.

performance, the outcome of the proceeding would have been different. *Davis v. State,* 116 Idaho 401, 775 P.2d 1243 (Ct.App.1989).

■ Generally, ineffective assistance claims are not amenable to review on direct appeal from a judgment of conviction in that the resolution of complex factual issues on the question of competency of counsel is based upon a trial record in which competence of counsel was not at issue. *Carter v. State,* 108 Idaho 788, 791, 702 P.2d 826, 829 (1985); *State v. Machen,* 100 Idaho 167, 171, 595 P.2d 316, 320 (1979). However, a determination of the claims raised by Nunez is possible on the record before us, and we address those claims in turn.

### A. *Failure to File Motion to Sever*

■ In the context of a motion to suppress evidence, this Court has held that when considering whether counsel's failure to file such a motion constitutes incompetent performance, the court is required to examine the probability of success of the motion in order to determine whether counsel's decision against pressing the motion was within the wide range of permissible discretion and sound trial strategy. *See Carter v. State,* 108 Idaho 788, 702 P.2d 826 (1985). Motions to sever based on prejudicial joinder are directed to the trial court's discretion. *State v. Abel,* 104 Idaho 865, 664 P.2d 772 (1983). The test we apply on appeal from the denial of a motion to sever is whether the facts relating to each charged offense were so distinct and simple that there was little risk the jury would have cumulated or confused the evidence. *State v. Cirelli,* 115 Idaho 732, 769 P.2d 609 (Ct.App.1989).

■ A motion for relief from impermissible joinder under I.C.R. 14 must be made prior to trial as set forth in I.C.R. 12(b)(5) and the failure to request severance prior to trial will be deemed a waiver. *Roberts v. State,* 108 Idaho 183, 697 P.2d 1197 (Ct.App. 1985). In *Roberts,* the Court of Appeals affirmed the conviction and determined that the record did not show that Roberts' trial counsel was ineffective solely because he did not make the motion to sever. *Id.* From the record before the Court in the instant case, Nunez similarly has not shown that counsel's failure to file a motion for relief from impermissible joinder in any way prejudiced him. Having thus failed to satisfy one part of the two-prong test of *Strickland,* Nunez is not entitled to relief on this claim.

### B. *Improper Questioning on Direct*

■ There is little question that Nunez' reluctant admission that he had left his prior law enforcement jobs due to charges of misconduct was prejudicial. We are not persuaded, however, that counsel can be deemed ineffective for "opening the door" to the prosecutor's question which led to the admission on the asserted basis that, "There could have been no tactical reason for defense counsel's inquiry." More importantly, Nunez has not shown that, but for the attorney's inadequate performance the result of the proceeding would have been different. *See Davis v. State, supra.* The jury heard evidence of over thirty instances where money entrusted to Nunez as an officer of the drug task forces was found missing or unaccounted for. The jury found Nunez guilty of racketeering for a series of seven thefts committed between 1990 and 1995, misuse of public money, conspiracy to destroy, alter or conceal evidence and of four sales tax violations. It is unreasonable to assume that the jury convicted Nunez because of his history of unrelated misconduct at his prior law enforcement jobs. We conclude that Nunez has not shown prejudice from the opening of the door to impeachment inquiry about his prior employment. We find no basis here to grant relief on Nunez' claim. As to whether cumulative errors by counsel can constitute ineffective assistance, we hold that Nunez by not providing any authority for that proposition has waived the argument. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

### CONCLUSION

We vacate Nunez' judgment of conviction and sentence on the racketeering count based upon a failure of proof of the elements required for liability under the racketeering statute, I.C. § 18–7804(c). Having set aside the racketeering conviction, we need not address whether the district court properly ap-

plied I.C. § 18–301 to permit prosecution for both racketeering and misuse of funds.

We uphold the jury's verdicts regarding the sales tax violations but we vacate the sentences imposed on those four counts. We remand the case for resentencing on Counts IV through VII as misdemeanors. We also hold that the conspiracy count was charged in the indictment and submitted to the jury as a misdemeanor, therefore, we vacate the felony penalty imposed on that count. The case is remanded for resentencing on the judgment of conviction for conspiracy, a misdemeanor. The remaining convictions and sentences are hereby affirmed.

Chief Justice TROUT and Justices SILAK, SCHROEDER and JOHNSON, Pro Tem, concur.