869 P.2d 571

**George Thomas GABOURIE, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 20162.**

Court of Appeals of Idaho.

Feb. 1, 1994.

Petition for Review Denied March 30, 1994.

Michael J. Vrable; Hayden; Fred W. Gabourie, Sr., Plummer, argued for petitioner-appellant.

Larry EchoHawk, Atty. Gen.; Michael Kane, Deputy Atty. Gen., Boise, for respondent. Michael Kane argued.

WALTERS, Chief Judge.

George Thomas Gabourie appeals from an order of the district court dismissing his application for post-conviction relief. We affirm the order in part but remand the case for further proceedings on one allegation made by Gabourie concerning a claim of ineffective assistance of counsel.

## BACKGROUND FACTS AND PROCEDURE

The facts of the case are described in *State v. Dambrell,* 120 Idaho 532, 817 P.2d 646 (1991), and need not be restated in detail here. It is sufficient to say that a man was shot and killed after he entered a Coeur d'Alene home in an attempt to recover money owed him from a drug transaction. Gabourie and William Dambrell were in the home and shot at the man, Dambrell with a shotgun and Gabourie with a .38 caliber pistol. The victim was killed when a pistol round lodged in his brain. Gabourie and Dambrell were charged with first degree murder. A jury found Gabourie guilty of second degree murder, and Dambrell was found guilty of involuntary manslaughter. The convictions were sustained on appeal in *State v. Dambrell, supra.*

Gabourie filed several post-trial motions and an application for post-conviction relief. He claimed that he received ineffective assistance of counsel during trial and that the prosecutor engaged in misconduct. The parties submitted the case to the district court by stipulation without an evidentiary hearing. The same district judge who presided over the trial also considered the application for post-conviction relief. The court concluded that Gabourie's counsel was competent and made strategic decisions during trial which did not constitute ineffective assistance. The court also concluded that even if counsel's conduct could be deemed deficient, Gabourie

had failed to show that he was prejudiced. No evidence of prosecutorial misconduct was found. The court dismissed the application. Gabourie appeals.

## STANDARDS OF REVIEW

■ An application for post-conviction relief is a special proceeding, civil in nature. *State v. Bearshield,* 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State,* 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct.App. 1992). In order to prevail in such an action, the applicant must prove his allegations by a preponderance of the evidence. *Stuart v. State,* 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Murray, supra.* A claim of ineffective assistance of counsel presents mixed questions of fact and law. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Murray, supra.* On appeal, when faced with mixed questions of fact and law, we will defer to the factual findings made by the lower courts if those determinations are based upon substantial evidence, but we will exercise free review of the application of the relevant law to those facts. *Murray, supra.* In order to prevail on a claim of ineffective assistance of counsel, the claimant must establish that his counsel was deficient in his performance and that this deficiency resulted in prejudice to the claimant. *State v. Bingham,* 116 Idaho 415, 423, 776 P.2d 424, 432 (1989); *Murray, supra.* There is a strong presumption that counsel's performance falls within the wide range of professional assistance, and the defendant bears the burden of proving that counsel's representation fell below an objective standard of reasonableness. *State v. Charboneau,* 116 Idaho 129, 137, 774 P.2d 299, 307 (1989); *Murray, supra.*

## CLAIMS RAISED

On appeal, Gabourie asserts that his attorney was ineffective in several respects. We list those arguments as follows, beginning with the one upon which we conclude that further proceedings before the district court must be held. Gabourie contends his trial counsel was ineffective because counsel:

(1) failed to call certain witnesses who could testify concerning a third suspect, who Gabourie claims shot the victim;

(2) told prospective jurors that Gabourie had previously been convicted of a crime;

(3) told prospective jurors that Gabourie would testify and then failed to have him do so;

(4) failed to introduce mitigating evidence of Gabourie's character; and

(5) failed to investigate the issue of prosecutorial misconduct.

As part of his appeal, Gabourie has submitted the clerk's record of his trial, his post-trial motions and the transcripts of those proceedings.

*Failure to call Robert Taylor as a Witness.*

First, we address the issue upon which we have concluded that a remand for further proceedings is necessary. Gabourie claims that counsel was ineffective because he failed to present a "crucial defense." This argument is made in relation to counsel's failure or refusal to call one Robert Taylor as a witness to testify before the jury.

During the presentation of the defense on behalf of Gabourie and Dambrell, the attorneys for both defendants informed the court outside the presence of the jury that they "have a mutual witness who has information that we believe would benefit the defense." This witness was Robert Taylor. However, Taylor was reluctant to testify because of pending criminal charges against him in an unrelated matter. The prosecution had refused to grant Taylor immunity in the event he testified for the defense. Consequently, defense counsel presented Taylor's testimony as an offer of proof to the court concurrently with a request for the court to grant immunity to Taylor notwithstanding the prosecutor's resistance to a grant of immunity.

The offer of proof proceeded through direct examination of Taylor by Gabourie's attorney. As evidenced by this offer, Taylor's testimony disclosed a conversation he had with Charles Coleman. Coleman, along with Ron Marazzo, had accompanied the victim to the house where the shooting took place. Coleman and Marazzo were friends of the victim and waited outside while the victim entered the house to retrieve his money. Both Coleman and Marazzo had been called as witnesses for the state and had testified that they were not armed and the victim was not armed when he was shot. According to the offer of proof, however, Coleman later told Taylor that Marazzo had fired the fatal shot. Following this presentation of evidence, the court concluded that Taylor would be granted immunity for his testimony.[1]

At the conclusion of defense counsel's direct examination, the court inquired whether the prosecutor wished to cross-examine Taylor. The prosecutor replied: "My cross-examination is probably going to be pretty extensive and will probably also get into the—we probably should before he takes the stand go into the extent and nature of his felony convictions as well[2] before he testifies in front of the jury. It will take awhile, your Honor, so it would probably be a good idea to break at this time." In light of this response, the court decided to recess for the day, stating: "Okay. I think we'll break at this time and we'll take it up tomorrow morning at 9:00 o'clock. We will be in recess in this matter until 9:00 o'clock tomorrow morning." The record shows that the recess was taken at 4:00 p.m. March 29th, 1988.

The next page of the trial transcript shows that the court reconvened in session at 9:07 March 30, 1988, at which time counsel for Dambrell stated that he anticipated resting Dambrell's case "within a couple of minutes;" that Gabourie's counsel had "one brief witness to present" which would take ten minutes; and, in response to an inquiry from the court, the prosecutor disclosed that he would call three or four rebuttal witnesses. No

---

**1.** After the determination to grant immunity had been made, Gabourie's counsel interrogated Taylor further. During this examination, Taylor testified that Coleman asked him to help Coleman get rid of a .357 Magnum pistol that had been "used in a crime of murder." Taylor related that he provided another gun to Coleman; that he

and Coleman then took Coleman's pistol to a pawn shop, pawned it for $60, and that Taylor got the money.

**2.** The record indicates that Taylor previously had been convicted of four or more felonies.

mention is made of Robert Taylor, and he was not called to testify before the jury during the remainder of the trial. No explanation appears in the record as to why he was not called. Nonetheless, in dismissing Gabourie's application for post-conviction relief, the court made the finding of fact that, "The tactical determination not to call Robert Taylor as a witness was in consultation between Gabourie, his trial counsel, ..., and Dambrell and his lawyer,...."

 It is well settled that the decision whether to call a particular witness is a strategic or tactical decision which will not be second-guessed or serve as a basis for post-conviction relief under an alleged claim of ineffective assistance of counsel unless that decision is shown to have resulted from inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. *Davis v. State,* 116 Idaho 401, 775 P.2d 1243 (Ct.App.1989); *see also State v. McKenney,* 101 Idaho 149, 609 P.2d 1140 (1980), *citing State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975). It is readily apparent in the present case that the record does not provide any basis for an objective evaluation concerning whether or why Gabourie's counsel made the decision to abandon Robert Taylor as a witness on behalf of the defense. It would be reasonable to conclude that someone communicated to the court the fact that Taylor would not be called to testify before the jury when the court reconvened on March 30, since no mention is made in the record of the proceedings on that date, either by the court or counsel, whether the prosecutor would proceed with cross-examination as planned the previous afternoon. However, this vacuity in the record does not necessarily establish that the reason Taylor was not called as a witness was the result of a tactical decision made by Gabourie's attorney. It is equally plausible that Taylor fled or disappeared during the night's recess; that he changed his mind about taking advantage of the court's decision to grant him immunity; that he just decided not to give the same testimony he had presented during the offer of proof; or that shortcomings of Gabourie's attorney led to the decision not to call Taylor as a witness. Accordingly, we hold that the court's factual determination to the effect that Taylor was not called as a witness due to a tactical decision on the part of Gabourie's counsel is simply not supported by the record. Consequently, the court's finding to the contrary is clearly erroneous and must be set aside. I.R.C.P. 52(a).

This does not mean, however, that Gabourie is entitled to post-conviction relief on the claim of ineffective counsel with regard to the failure to use Taylor as a witness, at this stage of the proceedings. Gabourie's verified petition merely alleged the ineffective assistance of counsel, in the following respect: "Trial counsel knew of a witness who would testify, if called, that a third person did shoot and kill the victim. I requested that this witness be called, that the witness was available and willing to testify, however, trial counsel failed and refused to call said witness to testify on my behalf." In particular, by affidavit submitted in support of the application, one of Gabourie's co-counsel stated that "A necessary witness, Robert Taylor was *not* called to testify in [Gabourie's] defense." The record contains no counter-affidavits submitted by the state; the state merely filed an answer to Gabourie's application, denying all allegations. The case was then submitted to the court for decision based on the pleadings and the affidavits, without an evidentiary hearing at which any witness would testify.

To this extent, the proceeding seems to have taken the posture of a summary judgment determination, with each side seeking a favorable ruling on its respective position. However, neither side presented any evidence from which it could be determined whether the failure to call Robert Taylor as a witness before the jury was indeed a tactical decision by Gabourie's counsel. Because conflicting inferences can be drawn on this question from the present status of the record, and because there is no evidence to support the court's factual determination that this decision was a tactical one, we deem it appropriate to remand this case for further proceedings on the question, at which time the parties should submit admissible evidence to resolve the issue.

*Failure to call Hannon as a Witness.*

Gabourie also claims that counsel's assistance was ineffective because counsel failed to call an attorney, Mr. Terrance Hannon, as a witness. Mr. Hannon was initially involved in the case but was substituted out before trial. He testified at the hearing on the motion for new trial. There, he stated that at one time he had a conversation with a person who stated that Coleman had the gun that killed the victim—thereby supporting the third-gun theory—and that the same gun was later delivered to his office.[3]

■ The record indicates that Mr. Hannon's testimony lacked necessary specificity and probably was inadmissible hearsay. Although it appears that a gun was dropped off at his office after the verdict was entered, he was not present and the gun was quickly forwarded to law enforcement authorities. He did not see the gun or the person who delivered it to his office. He did not know the date of the delivery or to whom the gun had been ultimately forwarded. He stated that when he had the conversation with the man who told him that Coleman had the gun, he did not learn whether the gun was a pistol or rifle. He did, however, communicate the information to the defendant's father, who was co-counsel for the defense. Apparently, defense counsel, including the elder Mr. Gabourie, were unsuccessful in their attempt to secure the appearance of the person who spoke to Mr. Hannon. We conclude the court below did not err in rejecting Gabourie's claim that his counsel was ineffective in not calling Hannon as a witness.

*Counsel's statements to the Jury.*

■ We turn next to Gabourie's assertions regarding counsel's statements to the jury. At the commencement of the trial, the prospective jurors were individually subjected to voir dire separate from other veniremen. During voir dire, counsel informed two jurors that Gabourie had previously been convicted of a crime and told one of them that Gabourie had served a sentence. Before counsel began his examination of the jurors, the court advised them of a defendant's right not to testify. Apparently starting with the idea that Gabourie would testify, counsel implied or told seven of the twelve jurors ultimately seated that Gabourie would testify. Counsel's statements ranged from suggestive, "he wants an opportunity to be heard," to outright, "he's going to testify." In his opening statement, counsel stated that Gabourie would testify to certain facts regarding the crime. As the trial progressed, however, it was decided that Gabourie would not testify.

When considering Gabourie's application, the court found that during voir dire, Gabourie's trial counsel indicated that evidence might be developed that Gabourie had a prior felony record. However, the court also concluded that Gabourie failed to establish any prejudice which would entitle him to post-conviction relief. From our review of the record, we agree and we uphold the district court's determination on this point.

With respect to the claim concerning counsel's information to the jury that Gabourie would testify, the court found that the final decision that Gabourie would not testify was made by Gabourie after consultation between him and his counsel, along with Dambrell and his counsel. The transcript of the hearing on Gabourie's motion for new trial indicates that he chose not to testify for two reasons: his attorney advised him not to and he did not have the evidence to support his testimony that a third person fired the fatal shot. Throughout the trial, counsel attempted to defend Gabourie by suggesting—during statements to the jury and cross-examination of witnesses—that a third party fired the fatal shot. Although counsel "vigorously" advised Gabourie not to testify when that decision was finally required to be made, Gabourie stated that he relied on the advice only "partly." His clear concern was that

---

**3.** Gabourie's motion for new trial was premised upon an assertion of newly discovered evidence: the pistol Gabourie possessed when the victim was killed. This pistol was not offered in evidence at trial. With this gun later available for testing, Gabourie attempted to establish that his gun was not the one that fired the fatal bullet. However, in determining the motion for new trial, the court found the scientific evidence regarding the gun to be inconclusive and Mr. Hannon's testimony not to be newly discovered. Accordingly, the court denied the motion.

the "third gun" theory would not be believed because the third gun was not available as evidence. Co-defendant Dambrell's testimony at the hearing on the motion for a new trial supports Gabourie's statement. At the same hearing, Gabourie stated that the decision not to testify was his own and that nobody prevented him from testifying.

■ The court found that the "record does not reveal what facts Gabourie would have added" had he testified. Counsel presented the third-gun theory throughout trial. Gabourie's argument is not so much that he had additional information, but that counsel's trial strategy may have appeared to the jury to be inconsistent and that the inconsistency was detrimental to the defense. It appears that developments during trial led defense counsel to change his mind about the efficacy of having Gabourie testify, and that he adjusted his trial strategy accordingly. Gabourie has not established that this constitutes ineffective assistance of counsel in the absence of evidence demonstrating that either the strategy as originally conceived or the strategy as adjusted in mid-trial was incompetent, given the information then known to counsel. Disagreements with trial strategy do not establish that counsel's performance was deficient. Although our Supreme Court did not address this precise question in *State v. Dambrell*, the Court did state that there was no evidence that the jury did anything to violate the instruction that it "must not draw any inference of guilt from the fact that a defendant did not testify." *Dambrell*, 120 Idaho at 540, 817 P.2d at 652. We conclude that Gabourie has failed to establish that he was prejudiced by counsel's strategy.

### Failure to Introduce Mitigating Evidence of Character.

■ Gabourie also claims that his counsel was ineffective because he failed to introduce mitigating evidence of Gabourie's character. Counsel told the jury that Gabourie was part of the "drug subculture" and suffered from post-traumatic stress disorder. Gabourie argues that counsel should have informed the jury of Gabourie's military record, his medical history from the veteran's hospital, and the prescription drugs he was taking. Specifically, Gabourie asserts that Louis Block, a prosecution witness, should have been cross-examined concerning Gabourie's prescription medication. Counsel, however, apparently considered Mr. Block to be more of a threat than an asset. The transcript of counsel's closing statement to the jury indicates that he specifically tried to discredit Block and use his testimony to support the theory that Gabourie and Dambrell acted in self defense. His cross-examination of Block was directed to establishing the third-gun theory.

■ Gabourie also asserts positive character evidence could have been introduced if counsel would have called the court-appointed psychiatrist and psychologist to testify. However, Gabourie has not disclosed what information the doctors could have provided. He also does not establish that the failure to call the doctors was deficient or that he was prejudiced by the alleged failure.

### Alleged Prosecutorial Misconduct.

■ Finally, Gabourie argues that counsel's performance was deficient because he did not investigate alleged incidents of prosecutorial misconduct. Although Gabourie includes this assertion in his list of issues on appeal, he has presented no argument to support the assertion. Therefore, we will not consider it. *Whitehawk v. State*, 119 Idaho 168, 170, 804 P.2d 341, 343 (Ct.App.1991).

### CONCLUSION

For the foregoing reasons, we affirm in part the order dismissing Gabourie's application for post-conviction relief. We vacate the district court's finding regarding the alleged tactical decision by the defense not to call Robert Taylor as a witness and remand the case for further proceedings on that issue.

LANSING and PERRY, JJ., concur.