883 P.2d 726

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Victor L. GUZMAN, Defendant–Appellant.**

**Victor L. GUZMAN, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

Nos. 20604, 20637.

Court of Appeals of Idaho.

Oct. 5, 1994.

Rolfe M. Kehne, Boise, argued, for appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, for respondent. Douglas A. Werth, argued.

**SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED OCTOBER 4, 1994, IS HEREBY WITHDRAWN.**

WALTERS, Chief Judge.

Victor Guzman (Guzman) was tried with a co-defendant for committing robbery at a grocery store. I.C. § 18–6501. They were represented by the same court-appointed attorney at trial and were found guilty. On appeal from the judgment of conviction and from an order denying his application for post-conviction relief, Guzman asserts that the court erred when it admitted certain testimony at trial and when it denied his motion for separate trials. He also asserts that he was denied effective assistance of counsel because a conflict of interest was created when the same attorney represented both defendants, and because the attorney did not file a motion to suppress a shotgun. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On the night of September 24, 1988, two men robbed an Albertson's grocery store in Boise. They approached the night manager who was bringing change to a checker and, pointing a shotgun at him, told him to give them his cash. The robber holding the shotgun wore a ski mask over his face and had a hispanic accent. The second robber wore a grocery bag on his head, but it did not cover his face. He was later identified in a line-up and at trial as Monte Brandt (Brandt). During the robbery, Brandt grabbed cash and food stamps from the register while the other robber trained the shotgun on the night manager. The manager was ordered by the man

with the shotgun to open the safe. After the manager complied, Brandt took more cash, bus tokens, blank money orders and money drawers. The man with the shotgun threatened the people present, then fled with Brandt.

The night manager and the checker who observed the robbery noticed that the shotgun the robbers used was unique in that it had a blonde stock and a brass BB sight, and was missing its butt plate. They also observed that the robbers' getaway car was an older, dark colored sedan, with vertical taillights.

Police located the getaway car and discovered it belonged to Robert Kerns (Kerns). Kerns told police that Lewis Segelson (Segelson) had borrowed the car at about 8:00 p.m. on the night of the robbery and returned it at about 11:00 or 11:30 p.m. When he returned the car, Segelson was driving and Brandt and Guzman were riding as passengers. According to Kerns, when Segelson, Brandt and Guzman entered his house Guzman was carrying a shotgun and the other two carried large green garbage bags. Kerns saw a money tray sticking out of one of the bags. Kerns stated that Guzman admitted taking a shotgun into Albertson's and wanted a machine to imprint money orders. Kerns testified that he and Guzman discarded some of the evidence into dumpsters. Kerns later took police to one of the dumpsters, where they were able to recover a receipt from a money order that came from the robbed Albertson's. Also, Guzman gave a friend a money order subsequently traced to the robbed store. Other witnesses testified that Guzman possessed cash and money orders, apparently proceeds from the robbery. Witnesses also testified that Guzman admitted taking part in the robbery. Brandt was later identified by the Albertson's checker. His fingerprint was found inside Kerns' car. Guzman's were not. Guzman was later arrested on an outstanding warrant while riding in a car in which was found the shotgun ultimately identified as having been used in the robbery.

Guzman, Brandt and Segelson were charged with robbery. Guzman and Brandt were to be tried together and were represented by the same court-appointed attorney. Their counsel moved for "relief from prejudicial joinder" of trials under I.C.R. 14. The motion was denied and trial proceeded. The jury found both defendants guilty.

Guzman's judgment of conviction was entered on September 26, 1989. He asked his trial counsel to appeal, but the appeal was filed too late. On March 27, 1992, Guzman's new court-appointed counsel filed an application for post-conviction relief. On March 24, 1993, the court granted the first request of the application and later resentenced Guzman in order to start anew the running of the proper period for filing an appeal. The other aspect of the application—that Guzman received ineffective assistance of counsel at trial—was denied. On April 28, 1993, a second amended judgment of conviction was entered. Guzman appeals from the denial of his application for post-conviction relief and from the second amended judgment of conviction.

## II.

## DENIAL OF APPLICATION FOR POST-CONVICTION RELIEF

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

#### 1. Conflict of Interest.

The first question we address is whether the court erred when it denied Guzman's application for post-conviction relief and determined that there was no actual conflict of interest and no ineffective assistance of counsel. An application for post-conviction relief is a special civil proceeding independent of the criminal case. *State v. Bearshield,* 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Gabourie v. State,* 125 Idaho 254, 256, 869 P.2d 571, 573 (Ct.App.1994). To prevail, the applicant must prove by a preponderance of evidence the allegations on which the application is based. *Gabourie,* 125 Idaho at 256, 869 P.2d at 573. A claim of ineffective assistance of counsel presents mixed issues of fact and law. *Id.* On appeal, we will not disturb the lower court's findings of fact unless they are not based on substantial evidence and are clearly erroneous. *Id.* We exercise free re-

view of the application of the relevant law to those facts. *Id.*

Generally, whether a defendant's right to effective assistance of counsel has been abridged requires a two-part inquiry. *State v. Koch*, 116 Idaho 571, 573, 777 P.2d 1244, 1246 (Ct.App.1989). First, counsel's performance must fall below an objective standard of reasonableness. *Id.* Second, the defendant must be prejudiced by counsel's deficient performance. *Id. See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ A defendant has the right under both the federal and state constitutions to representation free from conflicts of interest. *Carter v. State*, 108 Idaho 788, 792, 702 P.2d 826, 830 (1985). Joint or multiple representation is not a *per se* violation of this right. *Giles v. State*, 125 Idaho 921, 923, 877 P.2d 365, 367 (1994); *Koch*, 116 Idaho at 574, 777 P.2d at 1247. Possible conflicts of interest exist in almost every case of joint representation. *Koch*, 116 Idaho at 574, 777 P.2d at 1247. Consequently, conflicts of interest arising from joint representation have been excepted from the general requirement that actual prejudice be shown. *Id.* Instead, prejudice may be presumed when counsel is burdened by an actual conflict of interest. *Id.* However, this is a narrow exception. "A presumption of prejudice is triggered only by an actual conflict of interest." *Id.* The conflict itself must be shown and will not be presumed. *Id.* Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance." *Id., citing Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). For example, an "[a]ctual conflict of interest might be shown if the defendant identifies with particularity alternative defenses or additional important evidence that should have been presented by counsel." *Giles*, 125 Idaho at 923, 877 P.2d at 367.

■ At the outset, we note that Guzman asserts on appeal that the state constitution should be interpreted to afford greater protections than those derived from the federal constitution. This argument was not raised to the district court and thus is not properly preserved for consideration by this Court. *State v. Wheaton*, 121 Idaho 404, 407, 825 P.2d 501, 504 (1992).

■ In the instant case, neither counsel nor the defendants expressly objected to the court regarding representation by one attorney. Generally, when neither the defendant nor his lawyer objects to joint representation of a co-defendant, the trial court is entitled to assume that no conflict exists or that the defendant knowingly has accepted such a risk. *Koch*, 116 Idaho at 574, 777 P.2d at 1247; *Cuyler*, 446 U.S. at 346–47, 100 S.Ct. at 1717–18. If special circumstances exist, such as an objection to joint representation or an awareness by the court of facts reasonably suggesting a conflict, the court has a duty to inquire and take appropriate remedial action. *Id.; Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

■ At the hearing for post-conviction relief, both defendants testified that they orally expressed their objections to counsel. However, counsel testified that he knew of no conflict and that in a meeting with the defendants before trial, both stated that they wanted to proceed together. In his application for post-conviction relief and now on appeal, Guzman asserts that counsel's position, as accepted by the district court, was erroneous. Guzman points to counsel's motion for "relief from prejudicial joinder" as an indication of "special circumstances" indicating his objection to joint representation. The motion asserted four supporting grounds: (1) the defendants had inconsistent defenses; (2) the weight of the evidence against each is disproportionate; (3) *U.S. v. Bruton*[1] problems may exist; and (4) each

1. The correct citation is *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). There, the Supreme Court held that in a joint trial of two defendants named Evans and Bruton, at which Evans did not testify, admission into evidence of Evans' pre-trial confession which implicated Bruton constituted prejudicial error. The Court held that introduction of the confession added substantial weight to the prosecution's case in a form that was not subject to

defendant may be prohibited from calling the other defendant in his defense due to the latter's Fifth Amendment rights. The motion was denied after the court heard the parties' offers of proof. Explaining the motion at the hearing for post-conviction relief, counsel testified that he qualified items three and four with the word "may" because he was not sure that these issues would arise. As it turned out, these issues did not arise. Neither Brandt or Guzman testified at trial and Fifth Amendment rights were not implicated. At the post-conviction hearing, Brandt testified that he had discussed with counsel his desire to plead guilty in order to make trial go easier for Guzman. However, this desire was based on entering into a favorable plea agreement with the state before trial. No agreement was reached and Brandt and Guzman, in consultation with counsel, decided not to take the stand. Further, no *Bruton* problems arose. In other words, no statements by Guzman or Brandt implicated the other.

Counsel did explain that inconsistent defenses might have been developed. First, Brandt was apparently very "high" during the robbery and counsel opined that it might have been possible to present a defense of involuntary intoxication. However, the decision to not raise this defense was a strategic decision not to expose Brandt's history of drug abuse. Further, Brandt's possible defense is not the focus of our appellate review: Guzman, not Brandt, has filed this appeal.

However, Guzman asserts that counsel indicated at the hearing for post-conviction relief that he refrained from pursuing a defense because of the joint representation. Counsel testified that he did not attempt to establish that Brandt performed the robbery with a man named Rafael Silva (Silva) instead of Guzman. Guzman asserts that the Silva theory was available because the police once received an anonymous call that Brandt and Silva were the robbers and Silva was briefly a suspect in the robbery. Careful analysis reveals that this defense does not measurably differ from the defense actually

presented. The Silva theory also ignores the other evidence at trial implicating Guzman.

Counsel's strategy was to hold the state to its burden of proving the identity of the robbers. Neither Guzman or Brandt took the stand. Counsel defended Guzman by asserting that Guzman did not participate in the robbery, that the evidence against him was circumstantial, and that the weight of the evidence against him was much less than the weight of the evidence against Brandt. For instance, Brandt was identified by a store employee and his fingerprints were found in the getaway car. The evidence against Guzman was not as strong, but still substantial. Robert Kerns testified that when Guzman and Brandt returned to Kerns' house in Kerns' borrowed car, Guzman entered the home carrying a shotgun and Brandt and Segelson entered carrying large green garbage bags with a money tray sticking out of one; that Guzman admitted taking a shotgun into Albertson's and wanted a machine to imprint money orders; that Kerns and Guzman threw away some of the evidence into dumpsters, where police were able to recover a receipt from a money order which was then traced to the robbed Albertson's. Evidence of the robbery was also found in Kerns' home. Other witnesses testified that Guzman made comments to them implicating himself in the robbery.

We conclude that the district court did not err when denying Guzman's claim that his counsel was faced with an actual conflict of interest which rendered his assistance ineffective. The alternative defense Guzman suggests counsel was precluded from raising did not substantively differ from the defense presented at trial, and its effectiveness was dispelled by the evidence presented.

### 2. Motion to Suppress

Next, we consider whether the district court erred by determining that there was no ineffective assistance of counsel when counsel failed to move to suppress a shotgun. To show prejudice because of counsel's failure to file the motion, Guzman must establish that the shotgun seized was suppressible under a

---

cross-examination, thereby violating Bruton's Sixth Amendment rights. Jury instructions given

to limit application of the confession were held to be insufficient to protect Bruton's rights.

timely motion. *Davis v. State,* 116 Idaho 401, 407, 775 P.2d 1243, 1249 (Ct.App.1989).

██ At the post-conviction relief hearing, Guzman's counsel stated that he did not believe there was a viable basis for a motion to suppress. We agree. The shotgun—identified by an eyewitness as the one used in the robbery—was seized from the back of a car stopped by police. Guzman was a passenger. Contrary to the state's argument on appeal, Guzman's status as a passenger does not leave him without standing to challenge the stop of the car. *See State v. Haworth,* 106 Idaho 405, 406, 679 P.2d 1123, 1124 (1984). However, the stop in this case was valid because it was supported by an outstanding warrant from Canyon County for Guzman's arrest. Once stopped, the driver of the car consented to the search. The consent left Guzman, who had no proprietary interest in the car, without standing to challenge the search. *See State v. Munhall,* 118 Idaho 602, 605, 798 P.2d 61, 64 (Ct.App.1990). Given these circumstances, it appears highly unlikely that a motion to suppress the shotgun as evidence would have been granted. We therefore hold that Guzman did not establish that he was denied effective assistance of counsel by his attorney's failure to file a suppression motion. *Davis,* 116 Idaho at 407, 775 P.2d at 1249.

### III.

### ISSUES ON DIRECT APPEAL

#### A. DENIAL OF MOTION FOR MISTRIAL

██ Appealing directly from his judgment of conviction, Guzman argues that the court erred when it denied his counsel's motion for mistrial. The motion was made after a witness named Steve Riley (Riley) testified that several days following the robbery, he saw Guzman with about an ounce of cocaine. When Riley asked Guzman where he got the money to buy the drugs, Guzman stated that he got it from the robbery of the grocery store. On appeal, Guzman asserts that the court had previously indicated that the state should explore the statement outside the jury's presence and that eliciting the statement in open court created sufficient prejudice to support a mistrial.

The record shows that on August 21, 1989, defense counsel filed a motion in limine to exclude, among other things, Riley's testimony concerning Guzman's cocaine possession. Counsel commented about the propriety of Riley's testimony, and the state responded that acquisition of drugs could have provided the motive for the crime. The court reserved ruling until further foundation was supplied "in [the] absence of [the] jury." On August 22, 1989, the court reconvened without the jury present. Counsel for each side discussed Riley's testimony. The court ruled that it would allow the state to proceed, assuming a foundation was laid. On August 23, 1989, outside the presence of the jury, the state offered comments that Riley would testify that Guzman had threatened him with physical harm. Defense counsel objected and the court ruled that the testimony would be allowed. Defense counsel also commented on Riley's "testimony regarding motive." The state responded, and the court ruled that it would allow the testimony. The jury was returned to the courtroom and Riley was sworn and briefly examined. Defense then requested time absent the jury, which the court granted. Outside the jury's presence, defense counsel moved for a mistrial based on Riley's reference to Guzman's cocaine use. The court denied the motion and the jury was returned. The record indicates that the court did what Guzman sought: it explored Riley's testimony outside the jury's presence before allowing his testimony to be offered in open court.

Guzman also asserts that Riley's testimony was erroneously admitted because it provided only speculative evidence of motive. Evidence of other crimes, wrongs or acts is inadmissible if the evidence is introduced to show a person's character to prove that he acted in conformity with that character. I.R.E. 404(b); *State v. Atkinson,* 124 Idaho 816, 818, 864 P.2d 654, 656 (Ct.App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1659, 128 L.Ed.2d 376 (1994). If the evidence is offered for a purpose other than propensity, such as to prove motive or identity, the evidence may be admitted. I.R.E. 404(b); *At-*

*kinson,* 124 Idaho at 818, 864 P.2d at 656. However, the evidence may be excluded if, after examining the evidence to determine if the evidence is relevant to a material issue, the court concludes that the threat of unfair prejudice substantially outweighs the probative value of the evidence. I.R.E. 403; *Atkinson,* 124 Idaho at 818, 864 P.2d at 656. Whether evidence is relevant is an issue of law over which we exercise free review. *Atkinson,* 124 Idaho at 818, 864 P.2d at 656. When reviewing the trial court's determination that the probative value of the evidence is not outweighed by the danger of unfair prejudice, we apply an abuse of discretion standard. *Id.*

Riley's testimony is relevant to whether Guzman robbed the store. It makes the existence of a fact of consequence to the determination of the action more probable than it would be without the testimony. *See* I.R.E. 401. Implicitly, the court determined that the probative value of the testimony substantially outweighed the danger of unfair prejudice. We agree.

## B. DENIAL OF MOTION TO SEVER TRIALS

■ Guzman's final assertion is that the court erred when it denied his motion for "relief from prejudicial joinder" under I.C.R. 14. A defendant may move to have his trial separated from that of a co-defendant if the defendant is prejudiced by having his trial joined with the other. I.C.R. 14; *State v. Dambrell,* 120 Idaho 532, 537, 817 P.2d 646, 651 (1991). The defendant bears the burden of showing prejudicial joinder. *Dambrell,* 120 Idaho at 537, 817 P.2d at 651. A motion to sever is directed to the court's discretion and we will not overturn a denial of the motion unless the court has abused its discretion. *Id.* *See also State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

Counsel's motion articulated the following grounds for having separate trials: (a) the defendants had inconsistent defenses; (b) the weight of the evidence against each is disproportionate; (c) *U.S. v. Bruton* problems may exist; and (d) each defendant could be prohibited from calling the other defendant in his defense due to that defendant's Fifth Amendment rights. As previously noted, the motion was denied after offers of proof were made. In his offer, Guzman's counsel argued that the evidence against each defendant was not the same and therefore Guzman's trial should be separate. Counsel stated that fingerprint evidence and an eyewitness identification directly implicated Brandt, but no such evidence was available against Guzman. However, the state responded with an offer of equally incriminating evidence against Guzman.

Guzman's argument on appeal suggests that the court's denial of the motion came without an articulated reason. The court minutes simply state "Court denied motion." However, we have previously explained that no Fifth Amendment or *Bruton* problems arose. Even though the weight of the evidence against each defendant differed, counsel pointed out those differences to the jury in an attempt to strengthen Guzman's defense. Moreover, both defendants relied on the same theory of defense. We conclude that the court did not abuse its discretion when denying the motion for separate trials.

## IV.

## CONCLUSION

The court did not err by denying Guzman's application for post-conviction relief. Guzman has not established by a preponderance of evidence that an actual conflict of interest existed in this case of joint representation. Guzman's defense was not prejudiced by counsel's failure to move to suppress the shotgun because no viable suppression motion could have been made. The court did not err when denying counsel's motions for mistrial or for relief from prejudicial joinder.

Accordingly, the second amended judgment of conviction, and the order denying the application for post-conviction relief, are affirmed.

PERRY, J., **concurs.**

LANSING, Judge, dissenting.

I join in parts II(A)(2), and III(A) of the Court's opinion. I respectfully dissent, however, from part II(A)(1), *concerning Guz-*

man's assertion that his defense counsel labored under a conflict of interest. Because in my view Guzman should be granted a new trial due to such a conflict of interest, I would not address the issue resolved in part III(B) of the Court's opinion.

As the majority notes, where a conflict of interest arising from joint representation of criminal defendants adversely affects a lawyer's performance on behalf of one defendant, that defendant's right to effective assistance of counsel is violated. *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In such event prejudice to the defendant is presumed. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067; *State v. Koch,* 116 Idaho 571, 574, 777 P.2d 1244, 1247 (Ct.App.1989). Therefore, the defendant is entitled to relief without the necessity of showing that, but for the conflict, the outcome of the proceeding would have been different.

The American courts' diligence in guarding against such conflicts is well-explained by the Second Circuit Court of Appeals in *United States v. Curcio,* 680 F.2d 881 (2nd Cir.1982):

Our uneasiness about sanctioning the joint representation of criminal defendants persists because the dangers of prejudicial conflict are both ubiquitous and insidious. "[A] possible conflict inheres in almost every instance of multiple representation," *Cuyler v. Sullivan, supra,* 446 U.S. at 348, 100 S.Ct. at 1718, in part because the interests of the defendants may diverge at virtually every stage of the proceeding, *see generally* Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interests and the Professional Responsibilities of the Defense Attorney,* 62 Minn. L.Rev. 119 (1978). Thus, the joint attorney may have to prefer the interests of one defendant over the other in deciding, for example, whether to accept or reject a plea bargaining offer to one defendant conditioned on that defendant's testifying against the other; whether or not to present a defense that helps one defendant more than the other; whether or not to cross-examine a witness whose testimony

may help one defendant and hurt the other; whether to have one defendant testify while the other remains silent; whether to have either defendant testify because one would be a poor or vulnerable witness; whether or not to emphasize in summation that certain evidence is admitted only against (or is less compelling against) one defendant rather than the other; whether or not to argue at sentencing that one defendant's role in the criminal enterprise was shown only to be subordinate to that of the other defendant. These dilemmas are insidious because it often is not clear that the conflict of interests, and not pure trial strategy, are the reasons for the tactics adopted—or forgone—at trial. As the Supreme Court observed in *Holloway v. Arkansas,* "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing," 435 U.S. at 489–90, 98 S.Ct. at 1181; "in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing. . . ." *Id.* at 490, 98 S.Ct. at 1181 (emphasis in original).

*Id.,* at 887.

Impairment of defense counsel's performance is shown where the attorney had to make a choice between possible alternative courses of action such as eliciting or avoiding evidence that is helpful to one client but harmful to the other, *United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.1983), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983), where a plausible strategy of shifting blame to co-defendants was available but foreclosed by the multiple representation, *United States v. Romero,* 780 F.2d 981, 986 (11th Cir.1986); *Fitzgerald v. United States,* 530 A.2d 1129, 1139–40 (D.C. 1987), and where the lawyer is prevented from zealously pursuing the strategy of emphasizing the relatively slight amount of evidence against one defendant as compared to the greater evidence against the other. *Fitzgerald,* 530 A.2d at 1139.

I am persuaded that such a conflict of interest is demonstrated here because Guzman's attorney was precluded from arguing

to the jury that the State's evidence identified only Brandt as a robber and, at most, indicated that Guzman was involved after the fact in handling some of the stolen property. The joint representation prevented Guzman's attorney from contrasting as zealously as possible the quantity and quality of evidence against Brandt, who was identified by eyewitnesses to the robbery and by fingerprints in the get-away car, with the circumstantial evidence against Guzman. The attorney's dual role foreclosed a defense strategy on behalf of Guzman of shifting the blame to Brandt and prevented the attorney from pointing to a third party, Rafael Silva—an individual who physically resembled Guzman and was a known associate of Brandt—as the person who likely participated with Brandt in the robbery.

I cannot agree with the majority's suggestion that there is no qualitative difference between the defense actually presented—holding the State to its burden of proof as to both defendants—and the one that was foreclosed by the joint representation, which could have placed the blame on Brandt and identified his likely accomplice as Silva. Because Guzman's attorney was foreclosed from even considering such a strategy by reason of his representation of both defendants, I would hold that Guzman has shown a conflict that affected the adequacy of his representation, entitling him to a new trial with a conflict-free attorney.