# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 40092

| | | |
|---|---|---|
| MARJORY ANN BARNES, | ) | 2013 Unpublished Opinion No. 668 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: September 19, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Fred M. Gibler, District Judge.

Judgment denying post-conviction relief, affirmed.

Greg S. Silvey, Star, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Marjory Ann Barnes appeals from the judgment dismissing her post-conviction action. In her amended petition Barnes raised several claims, but on appeal her claim of error is narrow. She argues only that the trial court erred by summarily denying her ineffective assistance claim based upon an actual conflict of interest.[1] We affirm.

_____

[1] In several places, Barnes appears to assert that the claim on appeal was summarily dismissed and in other places asserts that her claim was dismissed after an evidentiary hearing. While some of Barnes's claims were dismissed or withdrawn before the evidentiary hearing, the claim on appeal was decided after an evidentiary hearing. Accordingly, we review the decision of the trial court as a denial made after an evidentiary hearing and not as a summary dismissal.

1

# I.

# BACKGROUND

This Court previously addressed Barnes's claims on direct appeal. *State v. Barnes*, Docket No. 37995 (Ct. App. May 4, 2012) (substitute unpublished opinion). In that opinion, we set forth the following factual background concerning the original trial:

> Following a report of concerns that Barnes and her boyfriend, Gregory Klundt, were manufacturing methamphetamine in their shared residence, law enforcement obtained a warrant to search their house. The search revealed a number of items associated with the manufacture of methamphetamine. The state charged Barnes with conspiracy to traffic in methamphetamine by manufacture, I.C. §§ 37-2732B(a)(3) and 18-204; trafficking in methamphetamine by manufacture, I.C. §§ 37-2732B(a)(3) and 18-204; and possession of a controlled substance, pseudoephedrine, with intent to manufacture methamphetamine, I.C. § 37-2732(a)(1)(A). After trial, a jury found Barnes guilty. Barnes was sentenced to concurrent determinate terms of five years for each count.

*Id*. In addition to her direct appeal, Barnes filed a post-conviction action.

In her amended post-conviction petition, Barnes claimed that she was due relief because her sentence was unlawful, new facts warranted the vacation of her conviction, the prosecutor had committed misconduct, and her attorneys provided ineffective assistance of counsel by, *inter alia*, representing Barnes while having an actual conflict of interest. During a hearing on the State's motion for summary dismissal, Barnes, through counsel, withdrew several claims including the prosecutorial misconduct claim and some of the ineffective assistance of counsel claims. Thereafter, the district court held an evidentiary hearing on the remaining claims including the claim at bar.

At the evidentiary hearing, Barnes adduced evidence that she and her co-defendant had obtained a single attorney, John Redal, to represent them both. While Redal could not specifically recall whether he had done so in this case, he believed he informed his clients of the benefits and risks of dual representation and how he would respond if an actual conflict emerged. Redal represented both Barnes and her co-defendant through most of the pretrial process, including a motion to suppress evidence. However, after the denial of the suppression motion, and realizing that the case likely would go to trial, Redal believed that the dual representation might become problematic because an actual conflict could emerge. He was concerned that one or both of the co-defendants would wish to "point the finger at the other party." Accordingly, he withdrew from the representation of Barnes and represented only her co-defendant at trial. In

2

Redal's view, the parties did not have any divergence of interests before the point at which he withdrew.

Barnes called a criminal defense attorney as an expert witness at her evidentiary hearing. It was that attorney's opinion that representing co-defendants was an undesirable practice and that it was most likely barred by the Idaho Rules of Professional Conduct. She also discussed, generally, what potential conflicts of interest might arise.

In addition to calling these witnesses, Barnes testified on her own behalf. The majority of her testimony was unrelated to the single issue on appeal. As to the claim on appeal, her only relevant testimony was that she never discussed with Redal the possibility of testifying against her co-defendant.

After the hearing, the district court issued its "Opinion and Order Re: Post Conviction Relief." In that opinion, the trial court held that Barnes was not entitled to relief on any of her claims. In particular, as to the conflict of interest claim, the trial court held that Barnes was not entitled to any presumption of prejudice because she had failed to come forward with any facts demonstrating that Redal had an actual, rather than potential, conflict of interest at any time before he withdrew from representing her.

## II.

## ANALYSIS

Barnes argues that the trial court erred when it dismissed her claim that Redal provided ineffective assistance of counsel because his representation was tainted by an actual conflict of interest. Barnes argues that she was less culpable than her co-defendant. She describes her co-defendant as the "prime mover in the offense," states that she had a less significant criminal history than her co-defendant, and states that she intended to manufacture methamphetamine only for personal use and not for sale. For all of these reasons, Barnes argues that her attorney should have attempted to reach a plea bargain wherein she would plead guilty to a lesser charge and avoid the mandatory minimum sentence for trafficking in exchange for testifying against her co-defendant or acknowledging her guilt on the record, which might allow the State to enter that acknowledgement into evidence against her co-defendant.

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. Idaho Code § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990). When reviewing a decision denying post-

conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Murray v. State*, 121 Idaho 918, 924-25, 828 P.2d 1323, 1329-30 (Ct. App. 1992). Ordinarily, to prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694; *Aragon*, 114 Idaho at 761, 760 P.2d at 1177.

Although *Strickland* generally governs ineffective assistance of counsel claims, "conflicts of interest arising from joint representation have been excepted from the general requirement that actual prejudice be shown." *State v. Guzman*, 126 Idaho 368, 371, 883 P.2d 726, 729 (Ct. App. 1994); *see also Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *State v. Koch*, 116 Idaho 571, 574, 777 P.2d 1244, 1247 (Ct. App. 1989). This rule flows from the constitutional right to conflict-free counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (representation by an attorney with an actual conflict violates the Sixth Amendment to the United States Constitution); *Carter v. State*, 108 Idaho 788, 792 n.2, 702 P.2d 826, 830 n.2 (1985) (Article I, § 13 of the Idaho Constitution also requires that a criminal defendant be afforded the assistance of counsel). But the presumption of prejudice is a narrow exception to *Strickland*, and the mere potential of a conflict is insufficient. *Guzman*, 126 Idaho at 371, 883 P.2d at 729. For this reason, joint representation alone is an insufficient showing because it is not *per se* ineffective assistance of counsel nor is it a *per se* actual conflict. *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978); *Koch*, 116 Idaho at

4

574, 777 P.2d at 1247; *McNeeley v. State*, 111 Idaho 200, 202, 722 P.2d 1067, 1069 (Ct. App. 1986). Rather, "[t]he conflict itself must be shown" and the defendant must demonstrate "that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'" *Guzman*, 126 Idaho at 371, 883 P.2d at 729 (quoting *Koch*, 116 Idaho at 574, 777 P.2d at 1247).

Barnes did not meet that burden of proof here because she did not prove that any potential conflict affected Redal's representation. Barnes argues that her attorney should have advised her to seek a plea bargain. There are cases holding that the failure to seek a plea bargain can be evidence of an actual conflict that affects performance. *See, e.g.*, *United States ex rel. Gray v. Dir., Dep't of Corr., State of Ill.*, 721 F.2d 586, 596-97 (7th Cir. 1983), but the mere failure to seek a plea deal alone is insufficient unless one shows that the failure to seek a plea deal resulted from the actual conflict. For example, in *Gray*, the defendant was a developmentally-delayed minor whose alleged involvement in the crime was minimal, who provided substantial aid to law enforcement in the investigation of the crimes, and who had a number of possibly meritorious defenses including coercion by her co-defendants. *Id.* at 596. An attorney for several co-defendants contacted the defendant after she testified to the grand jury but before a preliminary hearing. *Id.* at 591-92. Thereafter, she changed her testimony to be far more favorable to her co-defendants and less favorable to the State. *Id.* at 592. She was eventually found guilty of aiding and abetting the underlying crimes and perjury. *Id.* at 587. In that case, the court observed that these facts, when taken together, showed that the defendant's interest was to continue cooperation with the State as a means of avoiding prosecution, gaining an immunity agreement, or obtaining a plea bargain; or, failing those options, her interest was to present a strong defense that would be antagonistic to those of her co-defendants. *Id.* at 596-97. On the basis of this divergence, the court found that the defendant's attorney had an actual conflict that adversely affected his representation of her.

The case at bar is significantly distinguishable from *Gray* where the defendant had potentially valid defenses and had already offered law enforcement and the State substantial aid in investigating the case, all of which may have enabled her to obtain immunity or a favorable plea agreement. Barnes has not shown that she had information to offer to the State that would have induced the State to agree to a favorable plea deal. Barnes identifies three grounds upon which a plea bargain would have been in her interest: her allegedly limited involvement in the

offense, her less serious criminal history, and her intent to use rather than sell the manufactured methamphetamine. While each of these grounds might be mitigating circumstances to argue at sentencing, none is a defense to the charges or a compelling reason to believe the State would have agreed to plea bargain with a reduction of the charges against Barnes. The State's evidence presented at trial shows that the State had a strong case against Barnes. There was substantial scientific evidence that methamphetamine was produced in the home and there was strong evidence linking both Barnes and her co-defendant to that production of methamphetamine. Given the strength of the evidence, Barnes has shown no reason to believe that the State would have been inclined to substitute reduced charges and thus that her first attorney could have obtained such a deal from the State. Moreover, even after Barnes obtained separate counsel, no such plea agreement was negotiated, and Barnes presented no evidence suggesting that Redal could have obtained such an agreement when Barnes's separate, independent counsel did not or could not. It appears that attorney Redal pursued the most promising defense--a suppression motion--before withdrawing from her case. Thus, Barnes's evidence fails to demonstrate that the alleged conflict adversely affected Redal's performance.

For all of these reasons, this case is distinguishable from *Gray* and is comparable to the circumstance in *State v. Lovelace*, 140 Idaho 53, 90 P.3d 278 (2003) *on reh'g*, 140 Idaho 73, 90 P.3d 298 (2004) (this portion of the holding was not relevant to the issues decided on rehearing). In *Lovelace*, the defendant complained that his attorney should have sought a plea bargain but did not do so because he was running for office. *Id*. at 61, 90 P.3d at 286. The Supreme Court held that the claim was not supported and was impermissibly speculative. *Id*. The same is true in this case. Barnes's assertion that her attorney's alleged conflict of interest adversely affected his performance because he did not secure a favorable plea agreement is pure speculation. The district court correctly determined that there was insufficient evidence that an actual conflict adversely affected the attorney's performance.

The judgment of the district court denying Barnes's action for post-conviction relief is affirmed.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**